## MONZINGO et al. v. JONES.
### No. 2014.

Court of Civil Appeals of Texas.  Beaumont.
Jan., 1931.

Minton & Minton, of Hemphill, for plaintiffs in error.

Bogard & Anderson, of San Augustine, for defendant in error.

WALKER, J.

This was a suit in county court of San Augustine county by M. F. Jones against S. F. Monzingo and Fidelity American Insurance Company for damages to his truck resulting from a collision between his truck and one of Monzingo's passenger busses. He alleged that the collision was the result of Monzingo's negligence. For cause of action against the insurance company he alleged that it had issued to Monzingo the policy of insurance required by law for the protection of such persons as might be injured by his negligence. The prayer was for judgment against both defendants.

The defendants answered by pleas in abatement, general and special exceptions, and general denial.

The verdict of the jury upon special issues was in favor of plaintiff, and judgment entered accordingly. The appeal is by writ of error, but we designate the parties as appellants and appellee.

### Opinion.

The plea in abatement was properly overruled. Appellee had the right to bring his action joining as defendants both Monzingo and his insurance carrier. The policy of insurance in question was issued and delivered to Monzingo by the insurance company under authority of section 11 of article 911a of Complete Texas Statutes 1928, being section 11 of chapter 270, page 399, General and Special Laws, Fortieth Legislature, which is as follows: "The Commission shall, in the granting of any certificate to any motor bus company for regularly transporting persons as passengers for compensation or hire, require the owner or operator to first procure liability and property damage insurance from a company licensed to make and issue such insurance policy in the State of Texas, covering each and every motor propelled vehicle while actually being operated by such applicant. The amount of such policy or policies of insurance shall be fixed by the Commission by general order or otherwise, and the terms and conditions of said policy or policies covering said motor vehicle are to be such as to indemnify the applicant against loss by reason of any personal injury to any person or loss or damage to the property of any person other than the assured and his employees. Such policy or policies shall furthermore provide that the insurer will pay all judgments which may be recovered against the insured motor bus company based on claims for loss or damage from personal injury or loss of, or injury to, property occurring during the term of the said policy or policies and arising out of actual operation of such motor bus or busses, and such policy or policies shall also provide for successive recoveries to the complete exhaustion of the face amount thereof, and that such judgment will be paid by the insurer irrespective of the solvency or insolvency of the insured. Such liability and property damage insurance as required by the Commission shall be continuously maintained in force on each and every motor propelled vehicle while being operated in common carrier service. In addition to the insurance hereinabove set forth, the owner or operator shall also protect his employees by taking out workmen's compensation insurance either as provided by the Workmen's Compensation Laws of the State of Texas or in a reliable insurance company approved by the Railroad Commission of the State of Texas. The taking out of such indemnity policy or policies shall be a condition precedent to any operation and such policy or policies as required under this Act (Art. 911a; P. C. art. 1690a), shall be approved and filed with the Commission and failure to file and keep such policy or policies in force and effect as provided herein shall be cause for the revocation of the certificate and shall subject the motor bus company so failing to the penalties prescribed herein."

The provisions of section 11 were made conditions of the policy. By providing that the insurance company must pay to an injured party the judgment recovered by him against the insured, "irrespective of the solvency or insolvency of the insured," the Legislature clearly manifested an intention to create a primary liability on the part of the insurance company in favor of such persons as may be negligently injured by the motorbus operator within the terms of section 11 just quoted. Not only does the policy in question on its face give this right to appellee, but also the policy was issued under the express provisions of the law giving him this affirmative right against the insurance company. Construing a policy with similar conditions, the court, in American Automobile Insurance Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534 (writ of error refused), held that the insurance company was properly joined as a defendant. On authority of this case, 5 Tex. Jur. 662 says: "The courts have rejected the contention that the insur-

ance company may not be joined because, under the terms of the policy, it cannot be liable until after judgment has been awarded against the insured." As we construe Texas Landscape Co. v. Longoria (Tex. Civ. App.) 30 S.W.(2d) 423, in its facts and the fundamental principles of law controlling the rights of the parties, it is on all fours with the facts of this case supporting our construction of this policy of insurance.

Upon another principle, corollary to the one just discussed, appellee had the right to join the insurance company as a defendant. By the express provisions of the statute and of the policy itself, appellee had the right to recover from the insurance company the amount of any judgment rendered in his favor against Monzingo; and it is the policy of the law of this state to allow, quoting from Judge Nickels' opinion in Blum Milling Co. v. Moore-Seaver Grain Co. (Tex. Com. App.) 277 S. W. 78, 80: "Joinder in respect to matters ex contractu and ex delicto if they arise out of or relate to the same transaction, and if, in their main aspects, the same evidence will solve the questions of liability as to each or both. Adams v. First National Bank (Tex. Civ. App.) 178 S. W. 993; Kemendo v. Fruit Co., 61 Tex. Civ. App. 631, 131 S. W. 73; M., K. & T. Ry. Co. v. Maxwell (Tex. Civ. App.) 130 S. W. 722; Fidelity Co. v. Fossati, 97 Tex. 497, 80 S. W. 74."

That the presence of the insurance company as a defendant in the suit might cause the jury to render a larger verdict was answered by the Supreme Court of California in Milliron v. Dittman et al., 180 Cal. 443, 181 P. 779, 780, as follows: "The only ground upon which it is suggested that the rights of the defendant might be injuriously affected is that a jury might be expected to return a larger verdict for the plaintiff in a suit in which the casualty company appears as a party defendant, because they would necessarily know that the operator of the bus, whose act actually caused the injury, was insured. The jury would presumably know in any event that the operator was insured, since the law requiring the filing of the bond was one of which all persons would be presumed to have knowledge."

■ The court did not err in refusing to instruct a verdict for appellants on the theory that appellee had proved no measure of damages. Nor was error committed in submitting this issue on the theory that the evidence was insufficient to support a verdict therein. Appellee introduced evidence as to the reasonable cost of repairs to the truck, and that the actual cost incurred by him in repairing the truck was reasonable. Further he showed by an expert mechanic that the engine in the truck was so damaged that it should have been replaced by a new engine. Under the rule announced in White v. Beaumont Implement Co. (Tex. Civ. App.) 21 S.W.(2d) 559, the issue of the measure of damages was raised and the verdict has support.

■ Question No. 1 was not duplicitous. The inquiry by this question was whether the agent of Monzingo was negligent "in the manner in which he drove the bus around the curve and down the hill." The proposition is that this submitted the issue of two separate places. The testimony was that "around the curve and down the hill" was the same place. Mr. Honeycutt testified: "The bus was on the left when we first saw it; hugging the left side of the road on the inside of the curve."

■ The court defined negligence as "want of ordinary care." This definition was excepted to merely on the ground that "it does not properly define the term 'negligence.'" This exception failed to call the trial court's attention to the omission in the charge and was, therefore, too general. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920.

■ The error in the court's charge in failing to submit to the jury a proper measure of damages was cured by giving the special charge requested by appellants on this issue.

■ Contributory negligence was submitted generally to the jury. On the issue of contributory negligence appellant complained that the court erred in refusing to submit the following questions:

"Was plaintiff's truck, at the time it was seen by Carnell Dorsey, on the wrong side of the road?"

"At what rate of speed was plaintiff's truck being driven upon or at the time of its collision with the bus?"

"Did Elizie Smith, on the 14th day of February, 1928, have a chauffeur's license?"

These charges, as requested, were properly refused. They submitted merely evidentiary issues. In order to constitute a defense it would have required the submission of an additional question that the conduct of plaintiff in the matters inquired about constituted negligence, and that such negligence was a proximate cause of the collision.

Without reviewing the evidence in detail, it is sufficient to say that the issue of unavoidable accident, as that term is defined in Russell v. Bailey (Tex. Civ. App.) 290 S. W. 1108, was not in the case.

Appellants' exceptions to the charge on contributory negligence, under the authorities cited above, were too general to constitute error.

■ The court did not err in receiving the testimony of Alonzo Beacham as to the amount of the repair bill and its reasonableness, and the testimony of Bronson King as to the reasonable cost of the repairs.

After the court had submitted its charge to the jury and after they had retired to consider their verdict, the jury returned into court in the absence of both parties from the court, with the following question addressed to the judge: "What is the value of the truck before the collision and what is the value of the truck after the collision? There are no evidence as to this question." To this question the court submitted the following instruction, without giving counsel on either side an opportunity to except thereto:

"You will be bound to answer that to the very best information furnished by the testimony be it much or little, because you are the sole and exclusive judges in the entire matter.
"R. H. Dent, Judge Presiding."

To these questions the jury returned the following verdict:
"Question No. 11    $300.00.
"Question No. 12    $100.00."

In entering judgment the trial court ignored the answer of the jury to these two questions, entering judgment for $251.09, being the value of the loss of the use of the truck and "the amount of damage * * * sustained by the plaintiff" by virtue of the collision, as found by the jury. The answer of the jury to its own questions under instruction of the court was in direct conflict with its answer to the questions on the same issue propounded by the court. For that reason the trial court committed error in the respect assigned, that is, in submitting these additional charges to the jury in the absence of counsel and in receiving the verdict of the jury thereon. The conflict upon these issues destroyed the validity of the verdict.

It was reversible error for counsel for appellee to make the following argument to the jury: "Gentlemen of the Jury, the witness, Carnell Dorsey, is interested in the result of this case; he is now on the payroll of the defendant, insurance company." Carnell Dorsey had testified on behalf of appellants. There was no evidence that he was on the pay roll of the insurance company. Appellants duly excepted to this argument and asked the court to instruct the jury not to consider it.

Question No. 6 was as follows: "Did the plaintiff, M. F. Jones, sustain any damage as the direct and proximate result of the negligence of the agent of the defendant, S. F. Monzingo, Carnell Dorsey?" This charge was directly upon the weight of the evidence and assumed that Monzingo was guilty of negligence in the respect charged.

For the errors discussed, the judgment of the lower court is reversed, and the cause remanded for a new trial.