VOLKER GRASSO V. CANNON BALL MOTOR FREIGHT LINES ET AL.

No. 6671.   Decided April 3, 1935.
Rehearing overruled May 15, 1935.
(81 S. W., 2d Series, 482.)

*Perry J. Lewis, H. C. Carter, Randolph L. Carter, Champe G. Carter,* all of San Antonio, for plaintiff in error.

Insurance company should be joined as a co-defendant and its policy inure to the benefit of the injured party. Pickens v. Seaton, 51 S. W. (2d) 1050; American Ind. Co. v. Martin, 54

S. W. (2d) 542; Lake v. Texas News Co., 51 Fed. (2d) 826.

*Marshall Eskridge, Josh H. Groce* and *George S. Rice, Jr.,* all of San Antonio, for defendant in error.

The insurance policy issued to the Cannon Ball Motor Freight lines did not fasten primary liability on the insurer in favor of the injured party, a stranger to the contract, and the joinder of the insurer in the first instant in a suit by the injured third party against the assured for damages suffered by reason of personal injuries alleged to have been received by the said injured third party through the negligence of the assured was improper. National Fire Ins. Assn. v. Maddox, 224 Mo. App., 90, 20 S. W. (2d) 705; Southern Travelers Assn. v. Wright (Com. App.), 34 S. W. (2d) 823; Leon v. Gulf Production Co., 35 S. W. (2d) 1101.

On the erroneous charge of the court: Floyd v. Fidelity Union Cas. Co (Com. App.), 39 S. W. (2d) 1091; Byrne v. Williams, 45 S. W. (2d) 336; Roberts v. King, 49 S. W. (2d) 991.

*Fulbright, Crooker & Freeman, C. A. Leddy* and *Harold R. Moore,* all of Houston, filed briefs as amici curiae.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This suit was filed in the 37th District Court of Bexar County, Texas, by Volker Grasso, plaintiff in error here, against Cannon Ball Motor Freight Lines, and Universal Casualty Company to recover damages for personal injuries alleged to have been sustained by Grasso as the result of the negligence of Cannon Ball Motor Freight Lines. It appears that Grasso lost his arm as a result of the accident. At the time of the accident the freight line was operating as a common carrier of freight for hire under a certificate of convenience duly issued by the Railroad Commission of Texas. The freight line answered to the merits of the case. The casualty company filed in due order its plea in abatement complaining of the attempt to join it in the same suit against the freight line. The plea in abatement was overruled by the trial court and the case submitted to a jury upon special issues. Based on the answers of the jury to the issues submitted the trial court entered a judgment for Grasso against the freight line and the casualty company. On appeal by the freight line and the casualty company this judgment was reversed and the cause remanded. 59 S. W. (2d) 337. Grasso brings error.

The most important law question involved in this appeal is whether in cases of this kind the surety on the insurance bond required by the statute here involved can be joined as a defendant in the suit against the principal. On this question our courts of civil appeals have conflicted. It is not necessary to name the courts of civil appeals that have taken one side, or those that have taken the other; it is sufficient to say that such courts have conflicted. It is our purpose in this opinion to definitely and finally settle the law question involved, as well as the conflict.

1, 2 It is our opinion that the trial court erred in not sustaining the plea in abatement raising the issue of misjoinder filed by the casualty company. It is also our opinion that the petition of the plaintiff in the district court stated no cause of action against the casualty company, and, as to such company, such petition was subject to a general demurrer. This conclusion is based on the terms of the statute governing the matter under consideration. In this connection it will be noted that the insurance policy here involved was issued to the freight line and placed on file with the Railroad Commission in compliance with the laws of this State as set out and contained in section 13 of art. 911b, Vernon's Ann. Civ. Stat., vol. 2. The statute in question reads as follows:

Sec. 13. "Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds and/or insurance policies issued by some insurance company including mutuals and reciprocals or bonding company authorized by law to transact business in Texas in an amount to be fixed by the Commission under such rules and regulations as it may prescribe, which bonds and insurance policies shall provide that the obligor therein will pay to the extent of the face amount of such insurance policies and bonds all judgments which may be recovered against the motor carrier so filing said insurance policies and bonds, based on claims for loss or damages from personal injury or loss of, ·or injury to property occurring during the term of said bonds and policies and arising out of the actual operation of such motor carrier, and such bonds and policies shall also provide for successive recoveries to the complete exhaustion of the face amount thereof and that such judgments will be paid by the obligor in said bonds and insurance policies irrespective of the solvency or insolvency of the

motor carrier, provided, however, such bonds and policies shall not cover personal injuries sustained by the servants, agents or employees of such motor carrier. Provided further that in the event the insured shall abandon his permit or certificate and leave the State, a claimant, asserting a claim within the provisions of said bonds or policies, may file suit against the sureties executing such bond or the company issuing such policies in a court of competent jurisdiction without the necessity of making the insured a party to said suit. Provided, however, that the Commission shall not require insurance covering loss of or damage to cargo in amount excessive for the class of service to be rendered by any motor carrier. Each such motor carrier shall, on or before the date of the expiration of the term of any policy or bond so filed by him, file a renewal thereof, or new bonds or policies containing the same terms and obligations of the preceding bonds and policies, and shall each year thereafter on or before the expiration date of the existing bonds and policies file such renewal policies and bonds so as to provide continuous and unbroken protection to the public having legal claims against such motor carrier, and in the event such renewal bonds and policies are not so filed, the Commission, after notice to the motor carrier, and hearing, may, within its discretion if it shall find and determine that the ends of justice will be better subserved thereby, cancel such permit or certificate for failure to furnish and provide such bonds or insurance as herein required.

"Each motor carrier shall also protect his employees by taking out workmen's compensation insurance, either as provided by the Workmen's Compensation Laws of the State of Texas, or in a reliable insurance company authorized to write workmen's compensation insurance approved by the Commission. (Acts 1929, 41st. Leg., p. 698, ch. 314, as amended Acts 1929, 41st Leg., 2nd C. S., p. 38, ch. 24; Acts 1931, 42nd Leg., p. 480, ch. 277; Acts 1933, 43rd Leg., p. 135, ch. 65)."

At this point we deem it expedient to also quote Section 11 of Article 911a, of the same statutes above mentioned. That statute reads as follows:

Sec. 11. "The Commission shall, in the granting of any certificate to any motor bus company for regularly transporting persons as passengers for compensation or hire, require the owner or operator to first procure liability and property damage insurance from a company licensed to make and issue such insurance policy in the State of Texas, covering each and every motor propelled vehicle while actually being operated

by such applicant. The amount of such policy or policies of insurance shall be fixed by the Commission by general order or otherwise, and the term and conditions of said policy or policies covering said motor vehicle are to be such as to indemnify the applicant against loss by reason of any personal injury to any person or loss or damage to the property of any person other than the assured and his employees. Such policy or policies shall furthermore provide that the insurer will pay all judgments which may be recovered against the insured motor bus company based on claims for loss or damage from personal injury or loss of, or injury to, property occurring during the term of the said policy or policies and arising out of the actual operation of such motor bus or busses, and such policy or policies shall also provide for successive recoveries to the complete exhaustion of the face amount thereof, and that such judgment will be paid by the insurer irrespective of the solvency or insolvency of the insured. Such liability and property damage insurance as required by the Commission shall be continuously maintained in force on each and every motor propelled vehicle while being operated in common carrier service. In addition to the insurance hereinabove set forth, the owner or operator shall also protect his employees by taking out workmen's compensation insurance either as provided by the Workmen's Compensation Laws of the State of Texas or in a reliable insurance company approved by the Railroad Commission of the State of Texas. The taking out of such indemnity policy or policies shall be a condition precedent to any operation and such policy or policies as required under this Act (Art. 911a; P. C., art. 1690a), shall be approved and filed with the Commission and failure to file and keep such policy or policies in force and effect as provided herein shall be cause for the revocation of the certificate and shall subject the motor bus company so failing to the penalties prescribed herein. (Acts 1927, 40th Leg., p. 399, ch. 270)."

It will be noted that Section 11 of Article 911a was enacted by a Legislature prior to the one which enacted Section 13 of Article 911b. It will also be noted that Section 11, supra, applies to motor busses, that is, carriers of passengers, while Section 13, supra, applies to motor carriers of freight. Why we have seen fit to quote both of these statutes will appear later in this opinion.

A careful reading of Section 13, supra, discloses that the obligation of the insurance contract by such statute required is only to pay *"judgments,"* not to pay damages resulting from the

negligence of a truck operator. In this connection we call attention to the fact that such statute in unambiguous terms only requires the insurance carrier to "* * * pay * * * *all judgments* which may be recovered against the motor carrier, * * *, based on claims for loss or damages from personal injury or loss of, or injury to property, * * * arising out of the actual operation of such motor carrier. * * *." (Italics ours). In this regard the statute by express words, and all fair implication to be drawn from the express words used, makes the basis of a suit by an injured party against the insurance company a *"judgment"* against the truck operator, and no authority for a suit against such insurance company is authorized, or has any basis whatever unless and until there is a judgment. Under the very terms of the statute a suit filed against the insurance company by an injured third party before there is a judgment against the truck owner is a suit without basis in law, and, as to the insurance company, the plaintiff's petition would not only constitute a misjoinder where the insurance carrier and the truck owner are joined in the same suit, but the suit as against the insurance carrier would be subject to a general demurrer because no cause of action can be alleged against it except on a judgment.

There is another reason why we think this plea of misjoinder should have been sustained. When we come to examine the legislative history of the two statutes above quoted we think such history demonstrates a conclusive legislative intent not to allow insurance companies executing bonds thereunder to be sued in the same suit with the motor owners or operators. In this connection it will be noted that the provisions of Section 11, supra, in so far as the misjoinder question under discussion here is concerned, are in substantially the same language as the provisions of Section 13, supra, under which this suit was brought. We therefore ought to conclude that the Legislature intended the two statutes to be given the same meaning and construction in that particular regard.

3   When we come to examine the legislative history of Section 11 of Article 911a, supra, we find that there is no escape from the conclusion that it was the legislative intent that such statute should not be construed so as to allow the insurance company to be joined in the same suit with the bus operator. When such statute, Section 11, supra, which was contained in H. B. No. 50, Regular Session 40th Legislature, 1927, was pending in the Senate an amendment thereto was offered to apply to such section. This amendment provided in express terms that the bus owner

and his insurer could be sued in the same action. This amendment was duly adopted by the Senate, and was contained in the Act as it originally passed that body. Senate Journal, 40th Legislature, Regular Session, 1927, p. 673. Such provision was not in the Act as it originally passed the House. After the Act, of which Section 11 is a part, was passed by the Senate with amendments, the Bill was returned to the House as amended, and the House refused to concur in the Senate amendments. House Journal, Regular Session, 40th Legislature, 1927, p. 1175. The bill went to a free conference committee. The report of this committee, which was adopted by decisive majorities in both houses eliminated the above-mentioned Senate amendment. We think this history of the Act evidences a legislative intent not to permit insurance companies under Section 11, supra, to be joined in damage suits in the same action with the bus owners. Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515.

It is evident that subdivision 11 of Article 911a, supra, does not expressly authorize the joinder of the insurer in damage suits against the insured. If such right is held to exist it must be put into the statute by implication. No court should read into a statute by implication that which both Houses of the Legislature have expressly rejected by decisive votes. On this question we will here quote from Judge Greenwood's opinion in Love v. Wilcox, supra:

"No court could justify putting into a statute by implication what both houses of the Legislature had expressly rejected by decisive votes. The House and Senate Journals leave no room for doubt of the legislative intent to deny the power exercised by the State Committee in seeking to debar names from the primary ballots under the resolutions of February 1, 1930. Once the legislative intent is ascertained the duty of the court is plain. To refuse to enforce statutes in accordance with the true intent of the Legislature is an inexcusable breach of judicial duty, because an unwarranted interference with the exercise of lawful, legislative authority."

4 It will be noted that Section 11, supra, was enacted by the 40th Legislature, while Section 13, supra, under which this suit was brought, was enacted by a subsequent Legislature. It may be contended that the legislative history of the former act cannot be looked to to ascertain the legislative intent of a subsequent Legislature in enacting the later Act. Be the general rule as it may in this regard, we are of the opinion that the Legislature enacting Section 13, supra, undoubtedly intended for it to be given the same construction as Section 11, supra, in re-

*gard to the matter of the rights of injured third parties.* The two statutes are in substantially the same language in this particular respect, and both statutes were enacted to regulate motor transportation, the only difference being that Section 11 regulates the transportation of passengers, while Section 13 regulates the transportation of freight. Under the circumstances detailed we think it would be unreasonable to say that the Legislature intended to deny the right to join the bus owner and his insurer under Section 11, but intended to allow such joinder under Section 13.

5   There is still another reason for our construction of the above-quoted two statutes. We have a right not only to look to the legislative history of statutes to ascertain the legislative intent, but we have a right to look to the history of the times out of which they grew, the evils intended to be remedied, and the good to be accomplished. Travelers' Ins. Co. et al. v. Marshall, 124 Texas, 45, 76 S. W. (2d) 1007. We quote the following from Judge Cureton's opinion in the case just cited:

"Generally it may be said that in determining the meaning, intent, and purpose of a law or constitutional provision, the history of the times out of which it grew, and to which it may be rationally supposed to bear some direct relationship, the evils intended to be remedied, and the good to be accomplished, are proper subjects of inquiry. Story on the Constitution (4th Ed.) vol. 1, p. 298, sec. 405; 6 Ruling Case Law, pp. 50, 51, secs. 45, 46 and many authorities in the notes; 9 Texas Jur., p. 437, sec. 26, and cases in the notes; Works of Madison (Pub. by order of Congress, 1884) vol. 3, p. 664, vol. 4, p. 17."

At the times the above-quoted statutes were enacted motor transportation of passengers and freight on our public highways had reached immense proportions. Many irresponsible, as well as responsible persons and parties, were engaged in the business of transporting passengers and freight by motor vehicles for hire over our public highways, and it became necessary to regulate such business for the protection of the general public, as well as those engaged in such business. To this end the Legislature saw fit to enact various laws regulating motor transportation for hire on our public highways. Among such regulations the Legislature enacted Sectitons 11 and 13, supra, requiring the motor transporters to execute bonds. It is clear to us that these bonds were intended for the protection of the general public as well as the motor owners. This must be true because if the bond is for the protection of the owner or insured alone then one of the principal purposes that the Legislature

undoubtedly attempted to accomplish, the protection of the public, has failed. We therefore hold that the bonds provided by Sections 11 and 13 inure to the benefit of the general public as well as the motor owners, but that such liability, in so far as the issues of this case are concerned, does not arise until there is a judgment against the owner.

It will be noted that the opinion in Ray v. Moxon (Civ. App.), 56 S. W. (2d) 469, uses the following language:

"The Monzingo v. Jones case, supra, construes a policy required by law to be taken out by motor bus operators and by statute is required to be so written as to give the injured party an affirmative right of action thereon."

6   In Kuntz v. Spence (Com. App. opinion approved), 67 S. W. (2d) 254, this section of the Commission adopted Judge Martin's opinion in Ray v. Moxon, supra. In doing so we did not construe Judge Martin's opinion as approving the holding in Monzingo v. Jones (Civ. App.), 34 S. W. (2d) 662. On the other hand we construed Judge Martin's opinion as merely stating that his opinion was not in conflict with the Monzingo v. Jones opinion. We recognize that Monzingo v. Jones is in conflict with this opinion on the matter under discussion here, and it is in that respect expressly disapproved. This bond does give an affirmative right to an injured third party directly thereon, but the cause of action does not accrue until there is a judgment, and the judgment is the basis of the third party's suit.

Some of the courts of civil appeals in cases involving these statutes have held that the joinder of the insurance company in the same suit with the insured should be permitted in order to avoid a multiplicity of suits. Such holding is error. Joinder for the purpose of avoiding a multiplicity of suits should not be allowed in cases like this where the insurance company is neither a necessary nor a proper party.

7   The plaintiff, Grasso, pleaded and proved in the trial court that the freight line was insolvent, and had been adjudged a bankrupt before the time of the trial. Counsel for Grasso contends that these facts should authorize the joinder of the freight line and the insurance company in the same suit. It is evident from our holding above that this contention should be overruled. Under the contract provided by Section 13, supra, the basis of a cause of action against the insurance company is a judgment against the truck owner. Whether the truck owner be solvent or insolvent is not the test. The insurance company is bound as the statute provides its contract of insur-

ance shall bind it. The contract binds it alone on a judgment.

In connection with the above it will be noted that Section 13, supra, provides:

"* * * Provided further that in the event the insured shall abandon his permit or certificate and leave the State, a claimant, asserting a claim within the provisions of said bonds or policies, may file suit against the sureties executing such bond or the company issuing such policies in a court of competent jurisdiction without the necessity of making the insured a party to said suit. * * *"

The above statutory stipulation makes no provision that the insurance company can be sued with the insured if the insured is insolvent or has been declared a bankrupt. In fact it makes no provision for suing the two together at all. It merely provides that the insurance company can be sued alone in instances where the insured "shall abandon his permit or certificate and leave the State." No such case is presented here.

It appears from the record that this case was submitted to a jury on 15 special issues. Some of these issues submitted questions relative to the alleged negligence of the freight line, while others submitted questions relative to Grasso's alleged contributory negligence. The 15th question submitted the issue of the amount of Grasso's damages. As bearing directly on the 15th question we here quote from the charge, including the jury's answer:

"If, in response to the foregoing question, you have answered that the defendant's truck was operated in a negligent manner, and that such negligence, if any, caused the injury to the plaintiff, and if you have also answered that the plaintiff was not guilty of negligence, contributing to the accident, then you will answer the following question; otherwise, you need not answer the following question:

"15. What amount of damages, if any, would, if paid now, reasonably compensate the plaintiff, Volker Grasso, for the injuries, if any, sustained by him which are shown by the evidence?

"Answer, stating amount.

"We, the jury, answer: $7500.00."

The Court of Civil Appeals holds that it was reversible error to submit to the jury the above quoted preliminary instruction preceding Question No. 15, because same was a general charge, and operated to inform the jury of the legal effect of their answers.

8 Counsel for Grasso contend that it is the law of this State

that it is not reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions will relieve them of the duty of answering certain other questions. We agree to this contention in some instances. In spite of this, it is certainly not proper for the court to tell the jury the ultimate result of all of their answers in submitting a case on special issues. In our opinion the instruction preliminary to question No. 15, supra, in effect did exactly that. It will be noted that the instruction directed the jury that if they convicted the defendant of negligence, and acquitted the plaintiff of contributory negligence, to find the amount of the plaintiff's damages, otherwise not. Such an instruction clearly told the jury that they must find the defendant guilty of negligence, and the plaintiff not guilty of contributory negligence in order for the plaintiff to recover. Such a charge is undoubtedly in violation of our special issue statutes. It was a general charge and informed the jury of the result of all of their answers. On another trial the issue of damages should be submitted without the above quoted preliminary instruction.

The judgment of the Court of Civil Appeals which reverses the judgment of the trial court and remands the cause for a new trial is affirmed.

Opinion adopted by the Supreme Court April 3, 1935.

Rehearing overruled May 15, 1935.