AMERICAN FIDELITY & CASUALTY CO., INC. v. HONORABLE JAMES W. MCCLENDON, CHIEF JUSTICE ET AL.

No. 6547. Decided April 3, 1935.
(81 S. W., 2d Series, 493.)

*A. E. Wood, J. W. Wheeler,* and *Dan Moody,* all of Austin, for relator.

The policy of insurance issued to the motor buss operator was a contract to indemnify him, as distinguished from a contract of primary liability on the part of the insurance company, in favor of party injured for the damages sustained by him. Cuellar v. Moore, 55 S. W. (2d) 244; Kuntz v. Spence, 67 S. W. (2d) 254, and cases cited in the opinion.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

In this action the relator seeks a mandamus to require the Honorable Court of Civil Appeals for the Third Supreme Judicial District of Texas at Austin to certify to this court for determination certain questions of law involved in the case of American Fidelity and Casualty Company, Inc., v. Charles F. Newman, No. 7833, on the docket of said court, and in which an opinion has recently been rendered. (60 S. W. (2d) 482).

The suit was originally brought in the District Court of Caldwell County, Texas, by Charles F. Newman, as plaintiff, against G. J. Merritt and American Fidelity and Casualty Company, Inc., as defendants. The plaintiff alleged that he sustained an injury, through the negligence of the defendant Merritt, his agents, servants and employees, while he (the plaintiff Newman) was traveling as a passenger on a motor bus operated by the defendant, G. J. Merritt; that the Ameri-

can Fidelity and Casualty Company, Inc., was the carrier of the liability and property damage insurance of the defendant Merritt as the operator of such motor bus; and that said American Fidelity and Casualty Company, Inc., had issued to the defendant Merritt and filed with the Railroad Commission of Texas a policy of liability and property damage insurance, under the provisions of Section 11, Chapter 270, Acts of the Regular Session of the Fortieth Legislature, covering the motor bus operated by the defendant Merritt and on which the plaintiff Newman was riding as a passenger at the time of his claimed injury. In making the American Fidelity and Casualty Company, Inc., a party defendant in the suit, the plaintiff Charles F. Newman asserted that said American Fidelity and Casualty Company, Inc., was, by reason of said contract of insurance, liable to him for the damages he had suffered as a result of said alleged injuries.

The American Fidelity and Casualty Company, Inc., filed a plea of privilege in said case, claiming its right to be sued in the county of its residence, which was alleged to be Dallas County, Texas. The plea of privilege conformed to the statutes governing such a pleading.

The plaintiff Charles F. Newman filed a controverting affidavit, alleging that the American Fidelity and Casualty Company, Inc., had issued to the defendant Merritt a policy of liability and property damage insurance under the terms of Section 11, Chapter 270, Acts of the Regular Session of the Fortieth Legislature; and claiming that the American Fidelity and Casualty Company, Inc., was, by reason of said policy of insurance, a necessary and proper party to the suit of Charles F. Newman against the defendant G. J. Merritt and that the District Court of Caldwell County had venue by reason of subdivision 4 of Article 1995, Revised Civil Statutes of Texas, 1925, and by reason of Section 2, Chapter 72, Acts of the First Called Session of the Fortieth Legislature (Subdivision 29a of Article 1995, Vernon's Annotated Civil Statutes of Texas.).

It is not necessary to set out the provisions of the policy of insurance, but it is sufficient to say that it was executed in compliance with Section 11 of Article 911a of what is known as the Motor Bus Act.

The plea of privilege was overruled and the judgment of the trial court was affirmed by the Court of Civil Appeals. The gist of the opinion of the court is disclosed by the following language:

"The first issue presented is whether appellant is, under

Secs. 4 and 29a of Art. 1995, R. S., a proper or necessary party to appellee's suit. If so, the Caldwell County District Court had jurisdiction over appellant. If not, appellant's plea should have been sustained. This in turn, depends upon whether appellant's undertaking was a liability policy or merely an indemnity policy; that is, whether appellant was primarily liable for the damages sustained, or was liable only as indemnitor to repay to Merritt what he was compelled to pay out as such damages after final judgment against him.

"While said policy did provide, among other things, that appellant would not be liable thereunder 'until a final judgment shall have been recovered against the assured'; it indemnified the assured against loss imposed by law resulting from claims upon the assured; and stipulated that the policy was written pursuant to the provisions of the Motorbus Act above referred to; and that its liability was to be fixed in keeping with the provisions of Sec. 11 of said Act, anything in the policy to the contrary notwithstanding. Clearly, therefore, appellant's liability is determinable under the provisions of Sec. 11 of said Motorbus Act.

"We do not deem any extended discussion of this issue necessary. The express language of the Act itself requires 'the owner or operator to first procure liability and property damage insurance' before permit to operate is authorized to be granted by the Railroad Commission. It also provides that 'such policy or policies shall furthermore provide that the insurer will pay all judgments which may be recovered against the insured * * * on claims for loss or damage from personal injury * * * and that such judgment will be paid by the insurer irrespective of the solvency or insolvency of the insured.' These provisions of the statute both as a matter of law and by the express terms of the policy itself are to be read into the policy. It is clear, we think, that such provisions fix not only a primary but an absolute liability on the insurer, not merely to indemnify the assured against what he might be compelled to pay out after judgment, but to itself pay such judgment or claim regardless of whether the insured motorbus owner had or could pay same; and that this protection clearly inured to the benefit of the injured party. That being true, appellant was a proper party to appellee's suit in Caldwell County."

It will be observed that the Honorable Court of Civil Appeals predicates its holding upon these propositions:

(a) That the terms and provisions of the statute are to

be read into the insurance policy and will determine the nature of the liability.

(b)   That the provisions of the statutes which are imported into the policy "fix not only a primary but an absolute liability on the insurer, not merely to indemnify the assured against what he might be compelled to pay out after judgment, but to itself pay such judgment or claim regardless of whether the insured motorbus owner had or could pay the same; and that this protection clearly inured to the benefit of the injured party."

(c)   That by reason of the foregoing the insurance company was a proper party to the suit.

Relator alleges that this decision is in conflict with the decisions of the Court of Civil Appeals for the Fourth Supreme Judicial District in Cuellar v. Moore, 55 S. W. (2d) 244; Lander et al. v. Jordan, 59 S. W. (2d) 959; Cannon Ball Motor Freight Lines et al. v. Grasso, 59 S. W. (2d) 337; and American Fidelity and Casualty Company, Inc., v. Jones Transfer and Storage Company, 46 S. W. (2d) 1054; and with the decision of the Court of Civil Appeals for the Seventh Supreme Judicial District in Ray et al. v. Moxon et al., 56 S. W. (2d) 469.

1   In the cases of Cuellar v. Moore, Lander et al v. Jordan, and Ray et al v. Moxon et al, the insurance policies were not issued under or in pursuance of either Section 11 of Article 911a or Section 13 of Article 911b of Vernon's Annotated Revised Civil Statutes.   The question of whether or not the terms of said statutes were a part of the policies and should govern was not involved.   Apparently in each of these cases the question decided was that by reason of the "no action clause" in the respective policies there was no primary liability against the insurer in favor of a third party.   It is therefore obvious that there is no conflict between these decisions and the one here in question.

In the case of American Fidelity and Casualty Company v. Jones Transportation and Storage Company a different question was involved.   There the question of primary liability to injured parties was not involved, but apparently the sole questions decided was that the liability of the insurance company under its contract to the insured was payable in the county of the insurance company's domicile, and not in the county where the injury occurred; and that venue was determined by that circumstance.

2    This leaves the question of conflict limited to the one case of Cannon Ball Motor Freight Lines v. Grasso. We have reached the conclusion that the decision of the Honorable Court of Civil Appeals in question is in conflict with the decision in the Grasso case. In the Grasso case the policy was issued under and in pursuance of Section 13 of Article 911b relating to motor carriers, while in the case in question the policy was issued under the provisions of Section 11 of Article 911a relating to motor busses. The policies appear to be in all material respects substantially the same. In the Grasso case the casualty company was made a party to the suit brought by Grasso against Cannon Ball Motor Freight Lines, the insured, the negligence of which it was alleged caused the injury to the plaintiff. The casualty company filed a plea in abatement, setting up a misjoinder of parties and causes of action. This plea was overruled by the trial court. To uphold the ruling in the Court of Civil Appeals it was contended that the casualty company was a proper party to the suit, because under the statute there was a primary liability against it in favor of the injured party. The Court of Civil Appeals held that the casualty company was not a proper or necessary party to the suit, and for that reason the plea in abatement should have been sustained. While the court apparently based its decision upon its prior holding in the case of Cuellar v. Moore, supra, yet it recognized that the terms of the statute were a part of the policy, and went further and held that the statute did not create a direct liability in favor of the third party. The decision of the court in this record is as follows:

"Appellees in their reply to appellants' second proposition raise the question that the alleged negligent party, being a common carrier for hire and by the provisions of article 911b, sec. 13, Vernon's Ann. Civ. St., is required to carry casualty insurance before it can secure a certificate of public convenience and necessity, and that such policy is required to be filed with the Railroad Commission of Texas; and allege that these are sufficient facts to take this case out of the general rule announced in the case of Cuellar v. Moore.

"Section 13, art. 911b, provides, among other things: 'That the obligor therein (meaning insurance policy) will pay to the extent of the face amount of such insurance policies and bonds all judgments * * * that such judgments will be paid by the obligor in said bonds and insurance policies irrespective of the solvency or insolvency of the motor carrier. * * * Provided further that in the event the insured shall abandon his per-

mit or certificate and leave the State, a claimant, asserting a claim within the provisions of said bonds or policies, may file suit against the company * * * without the necessity of making the insured a party to said suit.'

"It seems to us that a fair construction of this statute would be that the insurance company would only become liable after the amount of injury and damages had become fixed in a final judgment, except where the alleged negligent party had abandoned his permit or certificate and left the State, in which event the injured party could file suit directly against the insurance company without the necessity of making the insured a party to the suit. There is nothing in the statute which would make the insurance company directly responsible to third parties, with the one exception expressly set forth."

On motion for rehearing the court made the following additional comment:

"The only remaining question is, Did the Legislature in passing section 13, art. 911b, Vernon's Annotated Statutes, intend that injured parties should have the right to join insurance companies in suits against truck lines for damages? Article 911b, dealing with truck lines, was passed by the Forty-first Legislature in 1929 (chapter 314). Article 911a, dealing with bus companies, was passed by the Fortieth Legislature in 1927 (chapter 270). The two articles are almost identical. It is a reasonable deduction that article 911b was largely copied from article 911a. When article 911a (then House Bill No. 50) was before the Senate, an amendment was adopted which read as follows: 'The motor bus company and the insurance company carrying the insurance required by this Section may be sued jointly in any action for damages arising from injury to person or property through the operation of any such motor bus or motor busses.'

"This amendment was eliminated by a free conference committee and the bill finally passed without any such provision. Shall we presume that the Legislature intended that which it eliminated from the bill?

"It is clear that neither from the face of the policy nor from the provisions of the statute can there be found authority which would justify the joining of the insurance company in a suit against the tort-feasor for damages."

The conflict between the two decisions is therefore obvious, except in the one case the construction of Section 11, Article 911a, relating to motor busses was involved, while in the other Section 13, Article 911b, relating to motor carriers was in-

volved. The question of actual conflict of decisions therefore turns upon the inquiry: Are these sections similar so far as the question of creating primary liability in favor of third parties is concerned? In other words, are they to be given the same construction and meaning in that regard?

3 In the opinion this day handed down in the case of Grasso v. Cannon Ball Motor Freight Lines (125 Texas, 154, 81 S. W. (2d) 482), we have decided this precise question, having given both of the sections the meaning that the Legislature did not by either of them intend to create a primary liability against the insurer in favor of third parties. The conflict of decisions is therefore established.

Mandamus will issue requiring the Honorable Court of Civil Appeals to certify to this court for decision the first question requested by relator to be certified as follows:

The question as to whether the American Fidelity and Casualty Company, appellant, was a proper or necessary party to the suit instituted by appellee, Charles F. Newman, against G. J. Merritt, which question is to be determined on the issue as to whether the policy of insurance between the appellant American Fidelity and Casualty Company and G. J. Merritt was a contract of indemnity against loss and expense as contradistinguished from a contract indemnifying against liability for loss or expense and establishing a direct liability upon the part of the insurer to the injured person, and upon the solution of which issue depends the question of appellant's primary liability to appellee and the right of appellee to join the appellant in this suit.

Should, however, the Honorable Court of Civil Appeals, in view of the decision this day made in the case of Grasso v. Cannon Ball Motor Freight Lines, set aside its previous judgment and enter judgment in accordance with our decision in that case, it will not be necessary for it to certify the question to this Court.

Opinion adopted by the Supreme Court April 3, 1935.