## C. E. BLUTH v. J. T. NEESON ET AL.

No. 6666.   Decided May 13, 1936.
Rehearing overruled June 10, 1936.
(94 S. W., 2d Series, 407.)

*Ernest Guinn* and *Claude Lawrence,* both of El Paso, for plaintiff in error Bluth.

The insurance company should have been made a party to the suit and it was error for the Court of Civil Appeals to hold

to the contrary. American Automobile Co. v. Struve, 218 S. W., 534; Texas Landscape Co. v. Longoria, 30 S. W. (2d) 423; Thurman v. Chandler, 52 S. W. (2d) 315.

*Lea & Edwards,* of El Paso, for defendant in error Neeson.

MR. JUSTICE CRITZ delivered the opinion of the court.

C. E. Bluth, individually and as next friend of Virgil Bluth, his minor son, sued J. T. Neeson for damages arising out of a collision between an automobile belonging to Neeson, and driven by his minor daughter, and a motorcycle driven by Virgil Bluth. The collision occurred on a public street in the City of El Paso. It ·is alleged that J. T. Neeson owned and maintained the automobile for the business and pleasure of himself and the members of his family. It is alleged that Neeson's said minor daughter, at the time of the accident, was a member of his family, and was driving such automobile with his knowledge and consent. The petition then alleges negligence on the part of the daughter proximately causing the damages complained of, but contains no allegations that would constitute J. T. Neeson liable, unless the family purpose allegations do so.

Neeson carried insurance on the car in question with Employers' Casualty Company, an insurance corporation. The Casualty Company was joined as a party defendant to the suit as such insurer.

Neeson and the Casualty Company both pleaded in abatement, setting up improper joinder of parties defendant and causes of action. Also, the objection of improper joinder was raised by proper special exceptions to the petition. The plea in abatement and exceptions were all overruled. The case was finally tried in the district court, and resulted in a judgment against J. T. Neeson and the Casualty Company. On appeal by Neeson and the Casualty Company, this judgment was reversed and the cause remanded by the Court of Civil Appeals at El Paso. 63 S. W. (2d) 1046. Neeson and the Casualty Company on the one hand, and Bluth on the other, have prosecuted separate writs of error to this Court. Both applications were granted.

We shall first consider the Bluth application. As already stated, Neeson and the Casualty Company contended in the two lower courts that the Casualty Company could not be joined as a defendant in the suit against Neeson. The trial court overruled this contention, but the Court of Civil Appeals sustained it. It is this ruling that Bluth complains of here.

The policy of insurance here involved was issued by the Casualty Company to J. T. Neeson. It covers the car in question here, and contains the following provisions that are pertinent to a decision of the question of joinder under discussion.

"BODILY INJURY LIABILITY.

"Agreement 'A' To indemnify the Assured against loss from the liability imposed upon him by law for bodily injury, including death at any time resulting therefrom (herein called 'Bodily Injury') Accidentally sustained by any person or persons if caused by the ownership, maintenance or use of the automobile described in the Declarations for the purpose therein stated. The Company's limit of liability, regardless of the number of Assured, as respects each automobile described, for bodily injury to or death of one person, shall be as first set forth in Item 1, Paragraph 'C' of the Declarations and subject to that limit for each person, its total liability on account of any one accident resulting in bodily injury to or death of more than one person, shall be as second set forth in said item.

"PROPERTY DAMAGE LIABILITY.

"Agreement 'B' To indemnify the Assured against loss from the liability imposed upon him by law for accidental injury to or destruction of the property of others including the loss of use thereof (herein called 'property damage') if caused by the ownership, maintenance or use of the automobile described in the Declarations for the purpose therein stated. The Company's limit of liability, regardless of the number of Assured, as respects each automobile described, for any one accident resulting in property damage, including loss of use, shall be as stated in Item 2 of Paragraph 'C' of the Declaration.

\* \* \* \* \*

"Determination of Liability. (3) No cause of action against the Company shall be had under Agreements A or B until the amount of loss or expense shall have been determined, either by final judgment against the Assured after actual trial in an action defended by the company or by a written agreement of the Assured, the claimant and the Company, nor in either event unless suit is instituted within the time herein limited.

\* \* \* \* \*

"Bankruptcy and Insolvency (17) The bankruptcy or insolvency of the Assured shall not relieve the Company or liability under agreements A or B hereof. Any person, or his legal representatives, who shall obtain final judgment against the Assured because of any such bodily injury, or injury to or

destruction of property, may proceed against the Company under the terms of this policy to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this policy applicable thereto. Nothing in this policy shall give to any person or persons claiming damages against the Assured any right of action against the Company except as in this paragraph provided. The Company reserves the right to settle any claim or suit, and to make such investigation or negotiation as may be deemed expedient by the Company.

* * * * *

"This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or endorsed hereon, and upon acceptance of this policy the assured agrees that its terms embody all agreements then existing between himself and this Company or any of its agents relating to the insurance described herein, * * *"

■ Under the now settled law of this State, the Court of Civil Appeals was correct in its ruling to the effect that the Casualty Company was improperly joined in the suit with J. T. Neeson. Furthermore, J. T. Neeson was improperly joined in the suit with the Casualty Company. Seaton v. Pickens, 126 Texas, 271, 87 S. W. (2d) 709; Universal Automobile Insurance Co. v. Culberson, 126 Texas, 282, 86 S. W. (2d) 727; Grasso v. Cannon Ball Motor Freight Lines, 125 Texas, 154, 81 S. W. (2d) 482; Moxon v. Ray, 125 Texas, 24, 81 S. W. (2d) 488; American Fidelity & Casualty Co. v. McClendon, 125 Texas, 41, 81 S. W. (2d) 493; Kuntz v. Spence, 67 S. W. (2d) 254; American Indemnity Co. v. Martin, 126 Texas, 73, 84 S. W. (2d) 697. This matter is fully discussed and decided in the above-stated authorities, and no good purpose would be served by further discussion here.

By proper assignments in their application for writ of error, Neeson and the Casualty Company earnestly contend that the evidence contained in this record shows, as a matter of law, that Virgil Bluth was guilty of negligence that proximately caused or contributed to cause this collision and resulting injuries or damages. This contention was overruled by the Court of Civil Appeals. In view of the fact that the case must be retried, we have decided to pretermit a decision of this question.

Finally, since this case must be retried, there is another matter which we deem it proper to mention. A reading of the petition and evidence shows that the car in question here belonged to J. T. Neeson, but was being driven at the time of this

collision by Miss Mary Neeson, his minor daughter. No facts are alleged or proven that would constitute J. T. Neeson liable for the negligent acts of such minor daughter. In this regard the suit seems to have been tried on the "Family Purpose Doctrine." This Court has rejected such doctrine. Trice v. Bridgewater, 125 Texas, 75, 81 S. W. (2d) 63.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 13, 1936.

Rehearing overruled June 10, 1936.