## TEXAS EMPLOYERS' INS. ASS'N v. BROWN.

### No. 6004.

Court of Civil Appeals of Texas. Amarillo.
Oct. 24, 1949.

Rehearing Denied Nov. 28, 1949.

234

---

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

John H. Merchant, Amarillo, for appellee.

STOKES, Justice.

This is a compensation case, appealed from a de novo trial in the District Court upon a proper appeal from an award of the Industrial Accident Board. Appellee, Ervin N. Brown, was employed as a common laborer by the American Smelting & Refining Company, and appellant, Texas Employers' Insurance Association, carried its compensation insurance under the Workmen's Compensation Act, Articles 8306 et seq., Revised Civil Statutes 1925, Vernon's Ann.Civ.St. art. 8306 et seq. Appellant filed its petition in the District Court in the ordinary form, alleging that on October 14, 1948, the Industrial Accident Board made its final award, attaching the award thereto for jurisdictional purposes. It alleged that it gave notice it would not abide by the award and other matters showing the District Court had jurisdiction of the case. Appellee filed his answer in which he included a cross-action for compensation and alleged that, on April 7, 1948, while engaged in the course of his employment, he sustained an accidental injury consisting of a hernia. He alleged that a surgical operation was performed upon him but that it was not successful and did not effect a cure. He alleged he was totally incapacitated to work and labor for approximately 15 weeks and that thereafter he was partially and permanently incapacitated to the extent of about 50 percent of his total capacity to labor.

The case was submitted to a jury upon special issues in answer to which the jury found appellee had been totally incapacitated for a period of 16 weeks and that it was followed by permanent partial incapacity to the extent of 35 percent of his capacity to labor. Appellant had paid to appellee compensation for 10 weeks at the rate of $25 per week and judgment was rendered in favor of the appellee, upon the verdict of the jury, for $611.64, matured compensation and $2831.86 in weekly installments of $11.06 each.

Appellant duly excepted to the judgment and has perfected an appeal to this Court, contending the judgment should be reversed because, first, the court erred in overruling its motion to realign the parties so as to make the appellee appear as plaintiff and appellant as defendant; secondly, the court erred in overruling its motion to declare a mistrial based upon the ground that appellee's attorney had read to the jury the jurisdictional allegations alleged in his cross-action and thereby made known to the jury the fact that the Industrial Accident Board had made an award adversely to it; thirdly, that the court erred in submitting Special Issues Nos. 4 and 5 upon condition that certain answers had been made to subsections of Special Issue No. 3; and fourthly, the court erred in computing the weekly wage of appellee under Sub-section 2, Section 1 of Article 8309 pertaining to the wages of other employees of the same class, instead of submitting same to the jury under Sub-section 1 pertaining to his own wages.

Immediately before the case went to trial appellant presented a motion to the Court to realign the parties or, alterna-

tively, to dismiss its original petition without prejudice to the right of appellee to prosecute his suit as plaintiff. The court denied the motion to realign the parties but granted the motion to dismiss the petition without prejudice to appellee's right to proceed upon his cross-action, and this action of the court constitutes the basis of appellant's first complaint. Appellant cites us to no case wherein the question has been presented to our courts. The purpose of the motion to realign the parties was, of course, to eliminate from the record any suggestion that the Industrial Accident Board had found against appellant and rendered its award accordingly. Whether the granting of the motion would have been of any benefit to appellant is questionable. However, the Legislature has written into the law of the State the specific manner in which cases of this kind shall be appealed from awards of the Industrial Accident Board. It provides that any interested party who is not willing to abide by the final ruling and decision of the Board shall, within 20 days, file with the Board notice to that effect and, within 20 days after giving such notice, bring suit in the county where the injury occurred to set aside the final ruling and decision of the Board. Under the method of appeal thus prescribed by the Legislature, the party appealing from an award of the Board necessarily appears upon the docket of the trial court as plaintiff. Since the appellant and the trial court followed the procedure prescribed by law, it can not be said that the court erred in maintaining that which the law provides shall be done. As observed by the Court of Civil Appeals of the Eleventh District, "There can be no legal wrong consisting alone of the proper exercise of a legal right." Southern Underwriters v. Erwin, 134 S.W.2d 720, 722.

In our opinion no error was committed by the court in denying appellant's motion to realign the parties and appellant's first contention will be overruled.

Appellant next contends that the court erred in overruling its motion to declare a mistrial. The motion was based upon the reading to the jury by appellee's attorney of the jurisdictional allegations of his cross-action and thereby making known to the jury the fact that the Industrial Accident Board had made an award adversely to appellant. The allegations of the cross-action involved in the motion were to the effect that the claim had been duly filed with the Industrial Accident Board by appellee as claimant against appellant and his employer, American Smelting & Refining Company; that the Board made and entered its final award, ruling and decision thereon; that, within 20 days thereafter, appellant notified the Board it would not abide by the award and, within 20 days after such notice, it filed this suit, appealing from the award; that appellee had filed his answer and cross-action; and that the court, therefore, had jurisdiction of the matter.

There have been numerous cases before the courts involving this question. It has been held in some of them that it was error for the the court to permit counsel for the claimant to emphasize the fact that the Industrial Accident Board had made an award in his favor, and others hold that where the information is merely brought out in the pleading as a matter of jurisdiction, and not emphasized, it is not reversible error. Commercial Standard Insurance Co. v. McGee, Tex.Civ.App., 40 S.W.2d 1105; Fidelity Union Casualty Co. v. Cary, Tex.Com.App., 25 S.W.2d 302; Texas Employers' Insurance Association v. Downing, Tex.Civ.App., 218 S.W. 112; Federal Underwriters Exchange v. Bickham, 138 Tex. 128, 157 S.W.2d 356; Texas Employers' Insurance Association v. Little, Tex.Civ.App., 96 S.W.2d 677. The pleading did not reveal the amount of the award nor that it was in favor of the appellee. It has been held in a number of cases that, upon a trial de novo, it is improper for counsel to disclose to the jury the decision previously made by another jury, court or board in the same case. Federal Underwriters Exchange v. Bickham, supra, and cases there cited. In that case counsel for the claimants made a statement to the jury panel, and thereafter read to the jury from his petition allegations, which revealed to the jury substantially the same information as that which was revealed by appellee's

counsel in this case. The Supreme Court observed that, while the statement complained of did disclose that the suit had been brought by the Insurance Company to set aside the award, it did not disclose what the award was. It was held that, although counsel should not place before the jury, either directly or indirectly, the fact that the award had been favorable to the claimant, the portion of the petition referred to did not disclose the effect of the award and therefore reading it to the jury presented no reversible error. Substantially the same conditions appear from the record in this case as appeared in the Bickham case.

▌ Appellant insists that the information given to the jury in this case concerning the appeal from the Board's award was especially damaging to it because there were two distinct fact-issues to be decided by the jury, namely, (1) whether the injury to appellee was a hernia at all, and (2) whether the operation was successful. We do not believe the question of whether the giving to the jury of such information as is here complained of constitutes error depends upon the question of whether or not there are other issues to be decided by the jury. It is a question of whether giving such information to the jury resulted in material injury to the appellant. The portion of the petition read to the jury by appellee's counsel did not disclose the effect of the award nor was the fact that appellant had appealed from the award emphasized in any way. In our opinion no injury resulted to appellant and no reversible error was committed by the court in overruling appellant's motion to declare a mistrial.

▌ The next contention relates to a directory instruction included in the court's charge following Special Issue No. 3 pertaining to Special Issues Nos. 4 and 5 to the effect that they should be answered only in the event the jury had answered affirmatively to Sub-divisions a, b, c, and e of special issue 3 and "it did not" to sub-division d of that special issue. Special Issue No. 4 submitted the questions of (a) whether the injury resulted in appellee's total incapacity to work, and (b) the length of time of such total incapacity, if any. Spe-

cial Issue No. 5, in four sub-divisions, submitted the same question in reference to appellee's partial incapacity. The effect of the charge was, therefore, to instruct the jury that it should not answer the special issues pertaining to appellee's total and partial incapacity unless they had found, in answer to the sub-divisions of special issue 3 that (a) appellee suffered a hernia, (b) that it appeared suddenly and immediately, (c) it was accompanied by pain, (e) the operation failed to effect a cure, and (d) the hernia did not previously exist. Appellant contends that, by requiring answers to the various sub-divisions of special issues 4 and 5 only in the event the sub-divisions of Special Issue No. 3 had been answered as above indicated, the court informed the jury of the effect upon the final judgment the various answers to the sub-divisions of special issue 3 would have. Charges similar to this have been disapproved by the courts as being general charges. Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482. Those cases were decided before the Texas Rules of Civil Procedure were promulgated by the Supreme Court. Rule 277, T.R.C.P. was substituted for Article 2189, R.C.S. 1925, under which it had consistently been held to be error for the trial court to insert in the charge anything that could be considered a general charge when the case was submitted upon special issues. Only "explanations" were permitted. The new rule, 277, T.R.C.P. permits "explanatory instructions" and provides that they shall not be subject to the objection that they constitute a general charge. Since the new rules were promulgated there has been no case as far as we know which interprets the change that was thus made and we are without a guide as to whether or not it was intended to remove the grounds for the objections that theretofore had been expressed to such charges as being general charges. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S. W.2d 481 throws some light upon the question, but it hardly reaches the issue here involved. Only those who have had the actual experience can know the difficulties encountered by a trial judge in drawing special issues to be submitted to the jury.

It frequently appears that, in whatever form they are drawn, logical objections to them can be made. If the court had omitted the instruction and condition upon which special issues 4 and 5 were to be answered, and submitted them without any condition whatever, it could have been argued with a respectable degree of logic that it had the effect of suggesting to the jury the court was of the opinion the appellee was entitled to recover and that the judge expected the special issues to be answered so as to accomplish that result. However this may be, appellant has correctly observed in its brief that the question of whether this was error, and of such a nature as to be reversible, depends upon whether the matter involved was open and obvious to the extent that, presumably, the jurors would have been fully advised thereof without the court's instruction or whether, instead, the point was of such a nature that the jury would not reasonably have known the effect of its answers except for the instruction complained of.

█ In his answer and cross-petition appellee based his claim for compensation solely upon the alleged fact that his injury resulted in a hernia. He alleged he had been operated upon but that the operation was not successful and that he had been totally disabled for about 15 weeks and partially disabled for the remainder of his life. In its answer to appellee's cross-action appellant denied this and alleged that any incapacity appellee might have sustained was temporary, rather than permanent, and its duration had long since terminated. Every feature of the trial, including the pleadings, the evidence, method of examining and cross-examining the witnesses and, no doubt, the argument, revealed to the jury that appellee was contending he had been injured; that the injury resulted in a hernia; that the hernia appeared suddenly; was accompanied by pain; whether it pre-existed; and whether the operation failed to effect a cure. These allegations and the evidence concerning them were the basis of all of the relief appellee was seeking. It would seem obvious that reasonably intelligent jurors would have known the effect of their answers to the various sub-divisions

of Special Issue No. 3 independently of any suggestion or information that might have been contained in the conditional instruction given to them in the charge of the court. Our conclusion is, therefore, that no reversible error was committed by the court in including it in the charge.

The court's charge did not embrace any issues with respect to the appellee's average weekly wage. Appellant admitted in the trial that the classification of appellee during the time he worked for American Smelting & Refining Co. was that of a common laborer. It admitted further that, during the year preceding the date of the injury, there was another employee of the American Smelting & Refining Co. who was properly classified as a common laborer and who worked 309 days at a daily rate, with overtime, of $8.78. Presumably the question of wages was not submitted to the jury because the court was of the opinion that the undisputed evidence, as a matter of law, eliminated his own labor and wages as a factor in determining the average weekly wage. Appellant objected to the charge, however, because this issue was not submitted to the jury, contending that the burden rested upon appellee to procure a jury finding that he did not work a sufficient number of days during the preceding year to make his wages a proper basis for his compensational rate before he had a right under the law to have his weekly wages computed on the basis of the wages of another employee. On his direct examination appellee testified that during the year immediately preceding his injury he worked on two ranches north of Dalhart; that his work consisted of stock-farming, feeding and handling cattle, grain harvesting and general ranch work, riding, "punching cows," fence work, repairing windmills and such like. This was not controverted. On cross-examination by appellant's counsel, he testified that his work had always been that of a common laborer and that was the work he did on the ranches. He said he had worked at common labor before he worked on the ranches; that he was still a common laborer; and that was the kind of work he did for the American Smelting & Refining Company. He said he had always

followed just one kind of work and that was the work of a common laborer.

■ Sub-section 1, Section 1, of Art. 8309, R.C.S. provides that, if the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same employer or not, substantially the whole of the year immediately preceding the injury, his average annual wage shall consist of 300 times the average daily wage he shall have earned in such employment during the days when so employed. Sub-section 2 provides that, if he shall not have worked in such employment during substantially the whole of the year, his average annual wage shall be based upon the daily wage of another employee of the same class, working substantially the whole of the preceding year in the same or a similar employment. It is well settled by the decisions of our courts that a claimant under the Workmen's Compensation Act is not entitled to have his rate of wages submitted or computed under sub-section 2, until he has shown he himself had not worked in his employment substantially the whole of the year preceding his injury.

■ Appellant contends that, since appellee himself admitted and testified that he had been engaged in common labor for the whole of the year immediately preceding his injury, the court erred in not submitting to the jury that question and in basing appellee's wage upon that being earned by another employee. We do not agree with appellant in this contention. While appellee admitted and testified that the work in which he was engaged during the preceding year was common labor, yet his testimony revealed clearly that he had been engaged in farm and ranch labor. Farm or ranch labor comes within the general term of common labor but it bears a distinct classification from labor in a mill, factory or other industrial plant. It is more particularly classified as an agricultural pursuit. The Workmen's Compensation Act recognizes this and exempts such laborers from its provisions. Art. 8306, Sec. 2, R.C.S. Holmes v. Travelers Ins. Co., Tex. Civ.App., 148 S.W.2d 270. The work of a farm laborer consists of plowing, planting, harvesting, keeping machinery and implements in repair and a variety of other duties that are not performed by an industrial laborer. The same can be said of a ranch laborer, commonly called a "Cowboy." The general term "common labor" is broad in its scope. It signifies any kind of unskilled manual labor performed by the masses of working people in lines of employment necessitating no special trade, skill, or previous training. If the law required a common laborer to base his claim for injury under the Workmen's Compensation Act upon any kind of employment that could be classed as common labor, it would indeed be a rare occurrence that he could base it upon the wages of another employee under sub-section 2 of the articles above mentioned. Appellee had worked for the American Smelting & Refining Company only about 2 days when he was injured and, in our opinion, the court properly based his wages upon the earnings of another employee of the same class. Since it was admitted by appellant that another employee of that class had worked for the employer more than 300 days, at a certain wage, it was not necessary to submit that question to the jury.

We have carefully examined all of the assignments of error and contentions urged by appellant and, in our opinion, none of them reveals reversible error. The judgment of the court below will, therefore, be affirmed.