## C. L. TRICE V. M. L. BRIDGEWATER.

No. 6360.   Decided April 10, 1935.
(81 S. W., 2d Series, 63.)

**76**

*Joseph W. Hale, George Clark* and *E. B. Burleson,* all of Waco, for plaintiffs in error.

*Cecil R. Glass,* of Marlin, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Writ of error was granted in this case in order that this Court might definitely settle a question of law concerning which there is some diversity of decision among the Courts of Civil Appeals. In order that the question may be squarely decided, we accept the findings of fact made by the Court of Civil Appeals touching this question, on which the majority of the court held the plaintiff in error C. L. Trice liable for the negligence of his minor son, Wilson Trice, while driving an automobile belonging to the father and used for the business and pleasure of the family. At the time of the accident in which defendant in error M. L. Bridgewater was injured and his automobile damaged Wilson Trice was seventeen years of age, was living with his father as a constituent member of the family, and was driving the car with the general consent of the father. It was conceded that he was a skillful and capable driver. At the time of the accident he was using the car solely for his own purposes and pleasure. The fact of his negligence and the injury to defendant in error by reason thereof was definitely determined by the findings of the jury. Upon the question of the liability of C. L. Trice for the negligence of his son, Justice Alexander dissented. The opinion of the Court of Civil Appeals discloses all other facts which may be essential to a full understanding of the question decided. 51 S. W. (2d) 797. While the majority of the court held C. L. Trice liable, the case was reversed and remanded because of insufficiency of evidence to show that Wilson Trice was driving the

car at the time of the accident. No application for writ of error was filed by defendant in error, and we are therefore limited to a discussion of the propositions that judgment should have been rendered in favor of C. L. Trice and in favor of Wilson Trice. As to Wilson Trice, however, the ground urged for a rendition of judgment in his favor is entirely different from the ground upon which judgment in favor of C. L. Trice is urged. The liability of C. L. Trice is the dominant question considered herein.

Liability as to C. L. Trice was upheld by the majority of the Court of Civil Appeals upon what is commonly termed the "family purpose doctrine," which has recently come to find an important place in judicial literature pertaining to automobiles. The different opinions of higher courts dealing with this doctrine would fill volumes of law books. This doctrine came into existence as a creature of judicial decision in order to establish or sustain liability on the part of an automobile owner (usually the head of a family) where the ancient relationships of master and servant and principal and agent could not readily be discovered as a basis of liability. It has been inappropriately referred to for the purpose of decision in many varying circumstances, as, for instance, where some member of a family was driving the family car in direct furtherance of the father's business, or for the transportation of the father or mother, or under circumstances where no question could arise as to the use of the car being for an immediate "family" purpose. It is obvious that in such cases there was discernible a real relationship of agency as a basis for the decision. In many such cases the child was engaged in a special mission for the father, or was using the car in connection with a matter in which the father or head of the family had a direct and substantial interest. These decisions therefore properly rest upon the doctrine of respondeat superior, and not upon the "family purpose doctrine" as such.

Strictly speaking, the "family purpose doctrine" has a more restricted meaning and is regarded as applying only to a situation such as is present here. It is the doctrine in this restricted sense that has evoked such a profusion of judicial discussion, and as touching its application in this restricted sense the courts of the country are sharply divided. The doctrine in this restricted but strictly accurate sense is thus clearly and concisely stated by the Supreme Court of Arkansas in the case of Norton v. Hall, 149 Ark., 428, 232 S. W., 934:

"The substance of the doctrine is that when the father or

other head of a family supplies an automobile for the use and pleasure of the family, permitting the members thereof to use it at will, those members thus using the automobile become the agents of the head of the family, and that each one using it, *even for his sole personal pleasure,* is carrying out the purpose for which the automobile is furnished, and is the agent or servant of the head of the family, so that the latter is liable for injuries resulting from negligence under the doctrine of respondeat superior." (Emphasis ours).

This doctrine as thus stated is now definitely rejected by the courts of some eighteen or twenty states, and has been rejected by practically every state where the decision has been made during the past few years. It is adopted in about twelve of the states, but the most recent decision in some of the states have tended to restrict and qualify the doctrine to a very material extent. For instance, the cases of Stumpf v. Montgomery, 101 Okla., 257, 226 Pac., 65, 32 A. L. R., 1490, and Schmidt v. Kier, 111 Okla., 23, 238 Pac., 410, by the Supreme Court of Oklahoma, have practically overruled the prior decision of Mc-Neal v. McKain, 33 Okla., 449, 126 Pac., 742. In Missouri in the case of Hays v. Hogan, 273 Mo., 7, 200 S. W., 286, the Supreme Court, overruled outright the prior case of Daily v. Maxwell, 152 Mo. App., 415, 133 S. W., 351, which had committed that state to the doctrine and which case had been relied upon by courts of other states which had adopted it. Likewise in Spence v. Fisher, 184 Calif., 209, 193 Pac., 255, 14 A. L. R., 1083, the Supreme Court of California overruled prior decisions and definitely rejected the doctrine in that state.

While this court has not yet been called upon to unequivocally adopt or reject this doctrine, yet there was an approach to the question in the case of Cook v. Mann, 40 S. W. (2d) 72, by the Commission of Appeals, wherein it was held that the father was not liable because of the negligent acts of the son under a state of facts quite similar to the facts herein involved.

1 After a most careful consideration of many of the leading authorities and the weight of the argument in support of and against the reasonableness and logic of this doctrine, we have reached the conclusion that as above set out, and under the present state of facts, the doctrine should not be adopted. In other words, we hold that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person who may be injured by reason of the negligence of his

minor son while operating the automobile on the public highway in pursuit of the son's own purpose and pleasure, notwithstanding the son may have been using the car with the permission of the father.

Some of the cases, the reasoning of which has influenced us to this conclusion, are the following: Hays v. Hogan, 273 Mo., 1, 200 S. W., 286; Smith v. Callahan, 4 W. W. Harr. (Del.) 129, 144 Atl., 46, 64 A. L. R., 830; Myers v. Shipley, 140 Md., 380, 116 Atl., 645, 20 A. L. R., 1460; Spence v. Fisher, 184 Calif., 209, 193 Pac., 255, 14 A. L. R., 1083; Watkins v. Clark, 103 Kan., 629, 176 Pac., 131; Arkin v. Page, 287 Ill., 420, 123 N. E., 30, 5 A. L. R., 216, and Norton v. Hall, 149 Ark., 428, 232 S. W., 934, 19 A. L. R., 384. A consideration of these cases leads to the inescapable conclusion that there is no sound or logical basis in law or reason on which liability of the father for negligent acts of his son, while in pursuance of his own personal ends and pleasure, can be grounded. Shortly after the advent of the automobile, when the doctrine had its inception, it was founded almost entirely upon the theory that the automobile was a dangerous instrumentality, and the father was negligent in placing it in the hands of a minor child, regardless of his competency as a driver. This theory has long since been abandoned, although some of the courts out of deference to prior decisions have declined to overthrow the rule, but have found it necessary to resort to other foundations for upholding the doctrine.

All courts which have adopted this doctrine have recognized and admitted that fundamentally there must exist,—either in fact or by process of judicial reasoning—a relationship of principal and agent or master and servant before there can be any liability. It being further admitted that at common law, and under almost universal decisions, the father is not liable for the tort of his minor child; the task has been to develop some plausible theory upon which the relationship of principal and agent or master and servant could be "presumed" or be said to exist. This theory as the basis of this doctrine has been very clearly and concisely stated by the Court in the case of Smith v. Callahan, supra, as follows:

"The theory upon which the cases sustaining the father's liability rely, is upon analysis founded, not upon the father's status as father, but rather upon his status as the head of a family, furnishing to or for the family an automobile to be used by its members for their own pleasure and convenience. When the automobile is so furnished, many courts have read

into the situation a relationship of master and servant or principal and agent, the master or principal being the head of the family, the servants or agents being the family members and the business contemplated to be attended to by the servants or agents in behalf of the master or principal being the entertainment, pleasure or convenience of themselves."

The development of this doctrine and the real basis for same has been very aptly, though somewhat bluntly, put by the Supreme Court of Kansas in the case of Watkins v. Clark, supra, in this language:

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition. Courts were reluctant to ignore it, and as a result, an adaptation of the law of master and servant and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and son and his daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not. The deduction was facilitated by employment of the fine art of definition— putting into the definition of the term 'business' the attributes necessary to bolster up liability. So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.' As this incongruity became more and more apparent, a further concession was sometimes made. If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation. If son took his best girl riding, prima facie it was father's little outing by proxy, and if an accident happened, prima facie father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact, ownership of the car, by declaring that the question of 'agency' was one for the jury, a process known in some quarters as 'passing the buck.' The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized

the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts."

The unsoundness of this theory as a basis for the doctrine has been demonstrated with unanswerable logic in many of the decisions. We cannot do better than reproduce a few of the statements from some of these cases. In the case of Arkin v. Page, supra, the Supreme Court of Illinois said:

"The proposition announced is that a father, by the furnishing of the means of amusement to his family, has made their amusement his business, so that each member of the family, in using for his own personal enjoyment, upon his own initiative, any of the means so furnished, though engaged exclusively in the pursuit of his own peculiar ends, without the direction, control, advice, consent, or knowledge of any other person, is still engaged, as agent, in carrying on the business of another. If the son is his father's agent to amuse himself with an automobile, he must also be a like agent for his own amusement with bicycles, horses and buggies, guns, golf clubs, baseballs and bats, row boats, and motor and sail boats, if these should happen to be provided, and if, in carrying on his father's business by the use of any of these articles, as his father's agent, to amuse his father's son, he should negligently injure anyone, his father would be liable as principal. Such a refinement of reasoning has not been recognized until since the advent of the automobile, or in the case of any other instrumentality."

In the case of Van Blaricom v. Dodgson, 320 N. Y., 111, 115 N. E., 443, the Court of Appeals of New York, among other things, said:

"The attempt is made, however, to reconcile these apparently contradictory features of this proposition by the assertion that the father had made it his business to furnish entertainment for the members of his family, and that therefore, when he permitted one of them to use the car, even for the latter's personal and sole pleasure, such one was really carrying out the business of the parent, and the latter thus became a principal and liable for misconduct. This is an advanced proposition in the law of principal and agent, and the question which it presents really resolves itself into the one whether, as a matter of common sense and practical experience, we ought to say that a parent who maintains some article for family use and occasionally permits a capable son to use it for his individual convenience ought to be regarded as having undertaken the occupation of entertaining the latter and to

have made him his agent in this business, although the act being done is solely for the benefit of the son. That really is about all there is to the question. Not much can be profitably said by way of amplification or in debate of the query whether such a liability would rest upon reasonable principles, or whether it would present a case of such theoretical and attenuated agency, if any, as would be beyond the recognition of sound principles of law as they are ordinarily applied to that relationship. The question largely carries on its face the answer, whichever way to be made. Unquestionably, an affirmative answer has been given by the courts of some states. * * * But it seems to us that such a theory is more illusory than substantial, and that it would be far-fetched to hold that a father should become liable as principal every time he permitted a capable child to use for his personal convenience some article primarily kept for family use. That certainly would introduce into the family relationship a new rule of conduct which, so far as we are aware, has never been applied to other articles than an automobile. We have never heard it argued that a man who kept for family use a horse or wagon or boat or set of golf sticks had so embarked upon the occupation and business of furnishing pleasure to the members of his family that if some time he permitted one of them to use one of those articles for his personal enjoyment, the latter was engaged in carrying out, not his own purposes, but, as agent, the business of his father. * * *

"But the rules of principal and agent are not thus to be formulated. They are believed to be constant and not variable in response to the supposed exigencies of some particular situation. The question whether one person is the agent of another in respect of some transaction is to be determined by the fact that he represents and is acting for him rather than by the consideration that it will be inconvenient or unjust if he is not held to be his agent. If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency."

In the case of Parker v. Wilson, 179 Ala., 361, 60 So. 150, 43 L. R. A. (N. S.) 87, the Supreme Court of Alabama said:

"The doctrine contended for amounts to this: That the pleasure of the family, in its utmost detail, is the business of

the father. As applied to the case at hand, it means that the son, in pursuit of his own pleasure with an automobile owned by his father, was engaged in the business of the father. But the doctrine, we think, has no firm foundation in reason or common sense. In theory, it overlooks well-settled principles of law; in practice, it would interdict the father's generosity and his reasonable care for the pleasure, or even the well-being, of his children, by imposing an universal responsibility for their acts."

There are other arguments advanced in the decisions above noted, and particularly in the case of Smith v. Callahan, which demonstrate the unsubstantial foundation for this doctrine, but we think it unnecessary to set out further argument here. The reasoning of these cases leads us to the conclusion that the doctrine cannot be adopted in this instance so as to fix liability upon C. L. Trice, the owner of the automobile. The question here decided briefly is that a minor son, who is a competent and skillful driver, is not engaged in a "family purpose" or a business of his father when driving his father's automobile on a mission involving solely his own pleasure and purposes.

The question of liability of a father, if any, for negligent acts of his child while driving the family car in furtherance of some particular mission of the father or some business mission which may involve the moral, intellectual and material welfare of the child or other members of the family, and in which matter the father has a direct interest, is in no manner to be affected by this decision. The question of liability, if any, in such cases, or in cases where there may be an issue of fact as to the nature of the mission in which the child may be engaged (other than his or her personal ends and pleasure) is left to be determined upon the facts of each particular case.

The holding herein is not to be understood as indicating that there may not be liability against the head of a family for injuries caused by a child who is so immature in years as not to be a competent driver of an automobile, or who may not be authorized under the law to drive a car, or in cases where the child is known to be a reckless, incompetent or unskilled driver.

The judgment of the trial court in favor of defendant in error against Wilson Trice was reversed and remanded by the Court of Civil Appeals for errors in the charge of the court. We are asked to render judgment in favor of Wilson Trice on the proposition there was no evidence to support a finding that he was driving the car at the time of the accident.

2   On the trial Wilson Trice, Joe Priest and the two young ladies who were in the car at the time of the accident all testified that Priest was driving the car. The testimony tending to show that Wilson Trice was the driver consisted of testimony by several persons to the effect that Wilson Trice shortly after the accident made declarations that he was driving the car and the accident was due to his own fault. He admitted having made this statement to his father the night of the accident, and the father testified that the son had made such statement.

In the case of Thompson v. Moor, 14 S. W. (2d) 803, it was held that declarations by one claiming land by adverse possession tending to show lack of intent to claim the land were sufficient to raise an issue of fact, however strongly contradicted by his statement on the trial. Admissions under some circumstances may be of very high value. Lester v. Hutson, 184 S. W., 268. Such admissions as were made by Wilson Trice and testified to by disinterested persons were unquestionably admissible as to him, and had such probative force as the jury might determine they were entitled to receive. While not conclusive, they were certainly entitled to some weight and it cannot be said that the finding of the jury, approved by the Court of Civil Appeals, is without any substantial evidence to support it.

The other matters complained of in application for writ of error may easily be avoided and will probably not arise on another trial.

The judgment of the trial court and of the Court of Civil Appeals as to C. L. Trice are set aside and judgment is here rendered in his favor. The judgment of the Court of Civil Appeals as to Wilson Trice reversing and remanding the case for another trial is affirmed.

Opinion adopted by the Supreme Court April 10, 1935.