772

**ENER v. GANDY et ux.**

No. 3592.

Court of Civil Appeals of Texas. Beaumont.

May 31, 1940.

Rehearing Denied June 12, 1940.

· Howth, Adams & Hart and L. Maston Meagher, all of Beaumont, for appellant.

T. Gilbert Adams and J. R. Beck, both of Beaumont, and Synnott & Smith and Adams & Hillin, all of Jasper, for appellees.

WALKER, Chief Justice.

This was an action by appellant, Mrs. Ruth Ener, against appellees, Mr. P. P. Gandy and his wife, Mrs. Wilma Gandy, jointly and severally, for damages in the sum of $30,200, suffered by her in an automobile collision in Jasper county, wherein her husband, William Ener, and her son, Henry Adolphus Ener, were killed, and she suffered serious personal injuries, and her automobile was greatly damaged. For cause of action appellant alleged: On the 13th day of November, 1936, while appellant and her deceased husband and son were driving towards Beaumont on the Jasper-Beaumont highway at a point just north of Kirbyville, another car belonging to appellees, driven in the opposite direction, ran into her car, with the result stated above. At the time of the collision, appellees' car was being operated by their son, Leon Gandy, and Mrs. Gandy was riding in the car with him. Leon was about 17 years old, and "was operating said automobile at the instance of the defendants herein, or else with their consent, express or implied, and at said time and place performing a family purpose in the operation of said car, and acting as the agent of the defendants herein, acting in the course of his authority or employment and within the scope of his authority and so as to be the authorized agent of said defendants." Appellant pleaded specially and in detail the several grounds of negligence upon which she predicated her cause of action.

Appellees answered (a) by general demurrer, general denial, and specially that P. P. Gandy was not present in the automobile at the time of the collision; that Leon was

not the agent of either of the defendants; that Leon, their son, at the time of the collision was not operating the automobile "in or about any business" of either of the defendants; that the defendants were not responsible for any of the damages suffered by appellant. They answered further that Mrs. P. P. Gandy, at all times material to this litigation, was a married woman, the wife of P. P. Gandy, and that the automobile, at the time of the collision, "was not being used or operated for the benefit of her separate estate," and that she was in no way responsible for the alleged negligence; (b) that "said automobile was being operated by defendants' son; that defendant, P. P. Gandy, had given his consent that the said son might drive said automobile to a football game and he was operating the same for his own pleasure; that he had allowed certain friends of his to ride with him in said automobile and had solicited his mother, Mrs. P. P. Gandy, to attend said football game with him and his said friends and she had accepted such invitation and was riding with him, she, having nothing to do with the operation which was entirely under the control and management of defendants' son; that he was using it for a pleasure trip for himself and friends and defendants were in no way interested in the operation thereof, for which reason they are in no way guilty of negligence connected with the operation of said automobile and of this they put themselves upon the country." (c) Appellees denied negligence on the part of Leon, and plead negligence on the part of the driver of the other car in the collision.

After the conclusion of the evidence, appellant moved the court for permission to file the following trial amendment, which motion was overruled, to which appellant duly excepted: "That at the time of the collision, as set out in said first amended original petition, the said Leon Gandy was driving the family car belonging to the said P. P. Gandy, with the consent of said P. P. Gandy, on a mission involving the moral, intellectual and material wellfare of the said Leon Gandy, who was the son of P. P. Gandy and Mrs. P. P. (Wilna) Gandy as alleged, in which mission or matter the said father and mother (P. P. Gandy and Mrs. P. P. Gandy) had a direct interest. That is to say, that at the time of said collision, the said Leon Gandy was engaged in the mission of conveying or carrying himself, a member of the Hemphill High School football team, as well as conveying his mother, Mrs. P. P. Gandy, either to or from a football game between the Hemphill High School and the Kirbyville High School, in which football game both the said Leon Gandy and the other football players, in said car at the time of the accident, participated as players. That it was a part of the high school activities of the said Leon Gandy to play football for his school and was an activity for which he received credit in his school work; that both the father and mother of the said Leon Gandy consented to and encouraged him in engaging in the activity of playing football, which sport or course of education involved the moral, intellectual and material welfare of the said Leon Gandy and was an activity in which both his father and mother had a direct interest." Appellant pleaded further in her trial amendment that, at the time of the collision, Leon Gandy and his mother, Wilma Gandy, were engaged in a joint enterprise in the operation of the automobile, and that Mrs. Gandy was guilty of negligence in failing to give Leon proper instructions in driving the automobile.

The trial was to a jury, and at the conclusion of the evidence judgment was for appellees on an instructed verdict, from which appellant has duly prosecuted her appeal to this court.

For the purposes of this opinion, we shall review appellant's assignments of error as if her trial amendment had been duly filed.

Appellant, as her assignments of error, asserts that the evidence raised the following fact issues in support of her pleading: (a) Leon Gandy was acting as the agent of his mother at the time of the collision. (b) Leon Gandy, at the time of the collision, was acting within the course and scope of his authority or employment as agent of P. P. Gandy. (c) Leon Gandy, at the time of the collision, was acting within the course and scope of his authority or employment as agent for Mrs. P. P. (Wilma) Gandy. (d) Leon Gandy, at the time of the collision, was on a mission involving his moral, educational, intellectual or material welfare, and in which matter the father, P. P. Gandy, had a direct interest. (e) Leon Gandy, at the time of the collision, was on a mission involving his moral, educational, intellectual or material welfare, and in which matter the mother, Mrs. P. P. (Wilma) Gandy had a direct interest.

Pretermitting a review of the facts on the issues of negligence pleaded by appellant against Leon Gandy (who was not a party to the suit) which appellees concede

was, as to these issues, sufficient to send them to the jury, the controlling facts of this case may be stated as follows (Q. & A. reduced to narrative):

Mrs. Wilma Gandy testified:

"My name is Mrs. Wilma Gandy. I am the wife of P. P. Gandy, and one of the defendants in this suit. Leon Gandy is my son; he is now 19 years old and in college at Nacogdoches. In November, 1936, he was a student in the Hemphill High School; at that time he was 17 years old and participated in high school football, being one of the regular players on the team. Playing football was a part of his school work; I can not say that he received credits for participating in football; he played with my permission; he played in the game on the 13th of November, 1936, with my permission. He went to the game in a Buick car belonging to my husband, P. P. Gandy, the family car; the various members of the family used this car for family business and for personal pleasure. Leon was driving the car at the time of the collision; W. C. Bell, Lloyd Salts, a Kerr boy, a Pinkston boy, and my son Phillip, and I were in the car with Leon. The Bell boy and the Salts boy played in the game that day. The collision with the Ener car occurred about 6:30 o'clock in the evening, on the return trip after the game. The high school did not provide a means for conveying the football players to the out of town games; the folks had to carry the football players; the folks had to furnish the means of transportation back and forth. On certain occasions our son went in a car that did not belong to my husband, on other occasions he took our family car and carried me and other football players to the game. On this particular occasion I had not taken the car to carry the football players; Leon was carrying us; he was driving, but I was in the car; I don't know whether I had been anywhere that year.

" 'Q. Isn't it a fact during that year that most of the time, at least the times the family car was taken, you were along with Leon? A. Not every time; I didn't go every time.

" 'Q. Most of the times? Isn't that true? A. I don't know. I can't think of any I had been to. I went to the home games, but I didn't go a lot with them off. I did not go out with Leon very often when he was driving. On the occasions when we were out together, regardless of what the errand was, he did the driving; Leon was

an obedient boy. I used the car any time I wanted to; I could drive.

" 'Q. And when you were in the car with him and his father was not along you had the authority to tell him how to drive, that is, to slow down or stop or anything of that nature, did you not? A. No; I left him to his own driving.

" 'Q. But if you were sitting there by him and saw a dangerous situation arise, if you should make any suggestions to him as to what to do he would obey you, would he not? A. I don't know whether he would or not. I think he had judgment enough.

" 'Q. Please answer the question. A. I don't think I would; No, I don't think I would say anything to him.'

"On the way back before the accident I didn't tell him to slow down; I didn't admonish him not to try to pass any automobile. Mr. Gandy and I both felt that it was to Leon's benefit to allow him to play football; it was for his pleasure and benefit. I don't know that Mr. Gandy knew that Leon and I would both be in the car that day; when the boy got the car from his father, he didn't then know that I would go with him."

P. P. Gandy testified: "I am one of the defendants in this suit. Leon and Phillip are my sons. The Buick car in the automobile collision with the Ener car belonged to me. Leon had my permission to drive the car on that day; he asked me for the car that morning. I knew he was going to the football game; that he was going to play football. He was a football player on the Hemphill High School team; he had my permission and sanction to play on the football team. I don't know that playing on the football team was a part of his school work; they play football and basketball. I don't know that it was a part of the extra curricula activities of the school; I could not say; I suppose it is. I rode frequently with Leon driving the car; I never did issue any orders to him, because I figured he could take care of the car better than I could."

Leon Gandy testified:

"My name is Leon Gandy. In November, 1936, I was attending Hemphill High School; and I played on the football team during that year. Playing on the football team was a part of my school work; I got credit in school for playing football. My family, Mr. and Mrs. Gandy, knew that I received credit for playing football. It was

agreeable for me to play; it was for my benefit and training in school to play football. In playing football I had to make out of town trips and play out of town games. The school did not provide any means of transportation to football players to these out of town games. We went in cars furnished by our families; just the ones that would volunteer to take the car.

"'Q. But that was understood by the members of the families of the football players that there was no means of transportation, that the boys would even go themselves or their families would provide the means of transportation to play football? Is that true? A. Yes.'

"After I left Kirbyville on the return trip up to the time of the accident my mother did not at any time request me to slow down; she didn't ask me not to attempt to pass automobiles going in the same direction we were going."

Mrs. Turner Ferguson testified: "The high school did not furnish the football players with transportation to the out ·of town games. I always provided transportation for my son."

## Opinion.

█ Appellant's theory of recovery, on the facts plead in her First Amended Original Petition upon which she went to trial, was based upon the "family purpose doctrine," which was thus defined by the Supreme Court of Arkansas in Norton v. Hall, 149 Ark. 428, 232 S.W. 934, 935, 19 A.L.R. 384: "The substance of the doctrine is that when the father or other head of a family supplies an automobile for the use and pleasure of the family, permitting the members thereof to use it at will, those members thus using the automobile become the agents of the head of the family, and that each one using it, even for his sole personal pleasure, is carrying out the purpose for which the automobile is furnished, and is the agent or servant of the head of the family, so that the latter is liable for injuries resulting from negligence, under the doctrine of respondeat superior." In Trice v. Bridgewater, 125 Tex. 75, 81 S.W.2d 63, 64, 100 A.L.R. 1014, Judge German writing the opinion for the Supreme Court, this definition by the Supreme Court of Arkansas was quoted as a correct definition of·the "family purpose doctrine." In the Trice-Bridgewater case, our Supreme Court rejected the family purpose doctrine, Judge German saying: "After a most careful consideration of many of the leading authorities and the weight of the argument in support of and against the reasonableness and logic of this doctrine, we have reached the conclusion that as above set out, and under the present state of facts, the doctrine should not be adopted. In other words, we hold that the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person who may be injured by reason of the negligence of his minor son while operating the automobile on the public highway in pursuit of the son's own purpose and pleasure, notwithstanding the son may have been using the car with the permission of the father." Weighed by Judge German's proposition, clearly the evidence introduced by appellant in support of her first amended original petition did not raise against appellees any issue of liability for the acts of their son Leon.

█ But in the Trice-Bridgewater case, in explanation of the proposition quoted above repudiating the "family purpose doctrine," Judge German said: "The question of liability of a father, if any, for negligent acts of his child while driving the family car in furtherance of some particular mission of the father or some business mission which may involve the moral, *intellectual, and material welfare* of the child or other members of the family, and in which matter the father has a direct interest, is in no manner to be affected by this decision. The question of liability, if any, in such cases, or in cases where there may be an issue of fact as to the nature of the mission in which the child may be engaged (other than his or her personal ends and pleasure), is left to be determined upon the facts of each particular case." (Italics ours.) Appellant sought to invoke by her trial amendment these exceptions to the "family purpose doctrine," on the theory that since Leon received credits on his high school work for playing football, therefore, in driving the car, he was on a mission which involved his "intellectual, and material welfare." That contention is denied. Clearly, in driving the car at the time of the collision, Leon was "in pursuit" of his "own purpose and pleasure," within Judge German's proposition repudiating the "family purpose doctrine," and it is wholly immaterial that he was driving the car with the permission of his father. The evidence did not raise against appellees that, in driving

the car, Leon was their "agent" or "servant" within the following proposition announced by Judge German in the Trice-Bridgewater case: "All courts which have adopted this doctrine have recognized and admitted that fundamentally there must exist—either in fact or by process of judicial reasoning—a relationship of principal and agent or master and servant before there can be any liability."

Under the proof, it is conceded that Leon was allowed credits for playing football, but there was no proof as to the number of credits allowed, nor the number of games played. The dominant purpose in playing football was for the "personal ends and pleasure" of the football players; that credits were allowed, on the evidence before us, was without probative force on any controlling issue.

The evidence did not raise the issue of joint enterprise between Leon and his mother, nor was any issue raised by the evidence, making P. P. Gandy liable on the theory that his wife was riding in the family automobile at the time of the collision. Under the evidence, Mrs. Gandy was nothing more than a passenger in the automobile, the guest of her son Leon, exercising no more authority over the acts of her son, as the driver, than any other passenger in the automobile.

The Trice-Bridgewater case was cited with approval by the Commission of Appeals, Judge Hickman writing the opinion, in Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, and by the Supreme Court, Judge Critz writing the opinion, in Bluth v. Neeson, 127 Tex. 462, 94 S.W.2d 407; it was also cited and followed by the Courts of Civil Appeals in Witt v. Universal Automobile Ins. Co., 116 S.W.2d 1095; Sturtevant v. Pagel, 109 S.W.2d 556, and Fernandez v. Lewis, 92 S.W.2d 305.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.