## SCARBOROUGH et ux. v. HOME OWNERS' LOAN CORPORATION.

### No. 5409.

Court of Civil Appeals of Texas. Amarillo.
March 30, 1942.

Rehearing Denied May 4, 1942.

Monning & Singleton and Jas. W. Bassett, all of Amarillo, and Scarborough, Yates & Scarborough, of Abilene, for appellants.

John R. Fullingim, of Amarillo, and A. M. Frazier and E. L. Early, both of Dallas, for appellee.

JACKSON, Chief Justice.

The record shows that on the 9th day of May, 1924, Homer P. Scarborough and wife, Tennie Mae Scarborough, acquired Lot No. 6 in Block No. 142 of the Plemons Addition to the City of Amarillo, Texas, by warranty deed from C. M. Craig and J. F. Craig for the consideration of $2,-138.39 paid in cash and the execution of two vendor's lien notes against the property of even date with the deed, the first for $1,900 due in six months and the second for $461.61, payable in seven installments, six for $75 each and the seventh for $11.-61, the total purchase price aggregating $4,500. The deed was filed and properly recorded in the Deed Records of Potter County, Texas, on May 9, 1924.

At the time of the purchase the only improvement on the lot was a five-room frame residence on the west end thereof which immediately became the family abode and impressed with residential homestead rights. On April 15, 1924, Homer P. Scarborough and wife executed a contract for the sum of $1,100, payable to M. C. Hancock, who obligated himself to erect two new rooms to the existing five-room house.. In consideration therefor Scarborough and wife executed and delivered their note for the sum of $1,100, payable in six months, which they secured by a valid mechanic's lien against their homestead. On June 7, 1924, M. C. Hancock, the legal and equitable owner of the note, for a valuable consideration, sold and transferred said $1,100 note together with the mechanic's lien to the National Loan and Investment Company.

C. M. Craig and J. F. Craig, the owners of the above described $1,900 vendor's lien note, on June 18, 1924, for a valuable con-

sideration sold and transferred their note, together with the vendor's lien securing the payment thereof, to the National Loan and Investment Company. On June 2, 1924, Scarborough and wife executed and delivered to Charles B. Cramer, Trustee for the National Loan and Investment Company, their deed of trust lien upon all of the above described premises to secure said company in the payment of the sum of $3,000, the aggregate of the vendor's lien note for $1,900 and the mechanic's lien note for $1,100, and extended the time of payment of each of said notes. On September 3, 1926, Scarborough and wife entered into a mechanic's lien contract covering said Lot No. 6 with B. M. Caraway who by the terms thereof obligated himself to build and complete on the east part of said lot within 60 days a brick building 50' x 60' for a consideration of $5,625, evidenced by a note payable in 60 days from the date thereof. The note and lien purported to create a lien on the entire homestead and were made and acknowledged by the husband and wife prior to the beginning of the construction of the brick building or the placing of any material on the ground for the construction thereof. The building was erected and accepted according to the terms of the contract.

On October 13, 1926, Scarborough and wife duly executed and delivered a deed of trust, describing said lot with the improvements thereon, to R. E. Underwood, trustee for J. M. Sanford, beneficiary, to secure the beneficiary in the payment of their note in the principal sum of $8,124.39 with interest at the rate of 10% per annum. This note was given in renewal and extension of the unpaid balance of $2,400 on the $3,000 note dated June 2, 1924, and payable to the National Loan and Investment Company and also in renewal and extension of the $5,625 note of date September 3, 1926, payable to Caraway and said notes and the mechanic's lien securing the payment of each of them were sold and transferred to J. M. Sanford by proper written instruments. On October 17, 1931, Scarborough and wife, in renewal and extension of said indebtedness and said liens, duly executed a new deed of trust on all of Lot 6, together with the improvements thereon, to secure the payment of the balance of their indebtedness amounting to $7,575.93, to J. M. Sanford in twelve months with interest at the rate of 10% per annum from date until paid. On

March 1, 1934, Scarborough and his wife entered into a contract with C. C. McMurtry for an additional improvement on their residence agreeing to pay therefor $107.67 evidenced by a note and mechanic's lien on said property. The improvements were completed as per contract and accepted. On October 20, 1933, the will of J. M. Sanford, deceased, was probated and Mrs. Garland S. Sanford appointed and qualified as independent executrix of the estate of her deceased husband of which she was made the sole devisee and legatee. On March 1, 1934, the $107.67 McMurtry note and lien were properly sold and duly transferred to Home Owners' Loan Corporation and on March 13, 1934 the $7,575.93 note given to J. M. Sanford and all liens purporting to secure the indebtedness were duly and legally transferred to Home Owners' Loan Corporation by a proper instrument in writing which was duly recorded and the loan corporation became the legal and equitable owner of said notes and whatever liens, rights and equities that were held by the former owners of said notes to secure the payment thereof. On April 7, 1934, Scarborough and wife, to renew and further extend the aggregate of all of said unpaid indebtedness, made, executed and delivered to Home Owners' Loan Corporation their promissory note for the principal sum of $6,400 and to secure the payment thereof the makers of the note on the same day made, executed and delivered their deed of trust to James Shaw in which they recognize the validity of former liens for the benefit of Home Owners' Loan Corporation which liens covered all of Lot 6, involved in this controversy.

The debt due and unpaid by the Scarboroughs on January 6, 1941, was the sum of $6,252.67 on which interest accrued at the rate of .844 per day. Since the inception of the loan by Home Owners' Loan Corporation it has advanced for the Scarboroughs in compliance with the terms and provisions of its deed of trust the following items: On June 12, 1938, insurance premiums in the sum of $118.94; on November 2, 1939, the sum of $271.03 for taxes and on October 21, 1940, the sum of $40 for taxes.

The Scarboroughs have since obtaining the loan from the corporation paid the sum of $2,781.91 for which they have been duly credited on the principal for the sum of $753.79 and on interest $1,940.12. If all the payments made were credited on the

indebtedness refunded by Home Owners' Loan Corporation for and on account of the residential homestead and none credited on the cost of constructing the 50'x60' brick building the debts against the residential homestead would be reduced to approximately $393.60.

Homer P. Scarborough and Tennie Mae Scarborough are husband and wife and with their five children have at all times material herein lived on, occupied and used the lot and the residence thereon for their residential homestead and, until the brick building was constructed on the east end of the lot, they used and occupied the entire premises as their family home for residential purposes. The property is situated in the incorporated City of Amarillo and has been continuously rendered by them for taxes as one property and so assessed by the taxing authorities and they have always claimed the $3,000 State exemption on the taxable value thereof.

Homer P. Scarborough and Tennie Mae Scarborough, hereinafter called appellants, on January 7, 1941, instituted this suit in the District Court of Potter County, Texas, against appellee, Home Owners' Loan Corporation, to cancel, set aside and annul the deed of trust and mechanic's lien on the west 90 feet of said Lot 6 in Block 142, asserting that the liens were invalid and void because said west 90 feet of said lot constituted their residence homestead.

Appellee answered by numerous exceptions, general denial, pleaded estoppel; that the liens were valid and covered all of said lot and premises and by way of cross-action against appellants and Mark Davis, doing business under the trade name of Texas Steam Laundry and Dry Cleaners, sought a judgment against Homer P. Scarborough for its debt and the foreclosure of its lien against him, his wife and Mark Davis against the entire lot and improvements and prayed a sale thereof to satisfy its obligations. The case was tried to a jury, but at the close of the testimony the court on its own motion discharged the jury, denied appellants all relief and adjudged and decreed that the Home Owners' Loan Corporation, a corporate instrumentality of the United States of America, have and recover on its cross-action of and from Homer P. Scarborough the sum of $6,433.26, the principal and interest on the obligation sued on by appellee on its cross-action, together with $39.36 attor-

neys' fees, aggregating, together with costs, the sum of $6,472; decreed a foreclosure of the lien of the Home Owners' Loan Corporation dated April 7, 1934, against Homer P. Scarborough, Tennie Mae Scarborough and Mark Davis on all of Lot 6 in Block 142 of the Plemons Addition to the City of Amarillo, Potter County, Texas, together with the improvements thereon, and directed the clerk to issue an order of sale commanding the sheriff or any constable to seize the property and sell the same as under execution to satisfy said debt with a writ of possession directing the sheriff to place the purchaser in possession within 30 days of the date of the sale. The judgment of the trial court was excepted to and is properly presented to this court for review.

The appellants assail as error the action of the court in holding valid the Caraway lien on the whole of Lot 6, including the house occupied as their residential homestead located on the west 90 feet of the lot, and directing a foreclosure of the lien thereon because they say the testimony shows that the Caraway mortgage for $5,625 was made to obtain the money with which to construct and with which was constructed the brick building on the east 50'x60' of the lot with the intention that it should be used and occupied by tenants as rental property and asserted that a mortgage lien with the intention to rent constitutes an abandonment of their homestead claim to the portion of the lot occupied by and necessary for the reasonable use of the brick building by a tenant and the purported lien on the part of the lot and improvements used and occupied by them as a residential homestead is invalid, void and unenforceable.

Mr. Scarborough testified that in August, 1926 he decided to build a 50'x60' brick building on the back of his residence lot for rental purposes; that one Mr. Hale who was operating a bus line from Amarillo to Enid, Oklahoma, had agreed to rent the building; that after the building was constructed it was not used as any part of the residential homestead; that the property is close to the business section of Amarillo and at the time he had the brick building erected he expected to rent it for revenue but if he did not rent it he expected to occupy it and carry on his business therein. When the building was finished one-half of it was rented to Mr. Hale and witness says he immediately oc-

cupied the other half in which to, and did carry on his business which was that of an automobile mechanic; that Mr. Hale rented one-half for about eight months and vacated it, but that witness continued to carry on his business therein for nine years. He kept the tools he used as an automobile mechanic and the repairs he handled in said building and carried on his entire business therein. The brick building was within about twenty feet of the residence but was not segregated therefrom in any way and they were not separated by any fence or barrier of any kind. The Caraway mortgage and note were given and the brick building constructed in 1926. This note and mortgage lien was, together with the balance of the prior notes and liens, transferred, renewed and extended from time to time until acquired by Home Owners' Loan Corporation on April 7, 1934. These record facts, together with appellants' admission that on completion of the brick building he immediately moved in and occupied one-half thereof for conducting his business as an automobile mechanic, show that he continued to use and occupy the entire building after Mr. Hale vacated the half rented for a period of nine years continuously. In 1938 Homer P. Scarborough filed a voluntary petition in bankruptcy and claimed as his homestead all of Lot 6, with the improvements thereon, stating the west 60'x90' was his residential homestead and the east 50'x60' was his business homestead. This property was allowed to him by the bankruptcy court on his homestead claim and in the proceeding Mr. Scarborough acknowledged the validity of the debt and liens of the Home Owners' Loan Corporation. Any secret intention appellants had of abandoning their homestead rights to the brick building and the part of the lot on which it was situated does not conform to their acts and conduct in their continued use and occupancy of the brick building as a place in which Mr. Scarborough carried on his business. Under these facts the court was warranted in concluding that the appellants had not abandoned their homestead claim to the brick building with the 50'x60' of land on which it was located and appropriated it to rental purposes.

■ In Jefferson County Investment & Building Ass'n v. Gaddy et ux., Tex.Civ. App., 90 S.W.2d 295, it is held that a homestead claim is not abandoned by mere intention but such intention must be ac-

companied by actual discontinuance of the use of the property. A temporary renting of the homestead is not abandonment.

In Panhandle Const. Co. v. Head et al., Tex.Civ.App., 134 S.W.2d 779, it is held that it requires the same character of testimony to show abandonment of a business homestead that it does to establish the abandonment of the residential homestead.

This contention of appellants is without merit.

Appellants contend that if their homestead claim to the 50'x60' of the east part of the lot was not abandoned for rental purposes then the mechanic's lien attempted to mortgage the residential homestead to secure funds with which to erect a business homestead thereon and to the extent that the mortgage purports to fix a lien against the theretofore established residential homestead the lien is invalid, unenforceable and void under the Constitution.

Section 50 of Article 16 of the Constitution of the State, Vernon's Ann.St., is as follows: "The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead; nor shall the owner, if a married man, sell the homestead without the consent of the wife, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void."

Section 51 of Article 16 is as follows: "The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at

the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

In our discussion we shall consider the Constitution and law as applied to a homestead located in a city, town or village, since the homestead involved in this suit is so situated.

The Constitution protects the homestead from forced sale for debts and from all liens, voluntary and involuntary, with the exception of the liens authorized therein. One of the exceptions is that the husband and wife have the constitutional right to mortgage the lot or lots to secure funds with which to construct homestead improvements on such lot or lots if contracted as required.

The Constitution and article 5460, Vernon's Annotated Civil Statutes, provide the manner for creating a valid lien on the homestead property. There is no contention in this case that the law was not complied with by the appellants and the contractors nor that the liens were not valid provided a lien can be created against the residential homestead to have constructed thereon a business homestead.

The Constitution provides that the husband and wife, if contracted as required, may create a valid lien on a lot or lots with which to borrow funds to erect improvements on said lot or lots for a residential homestead or a business homestead, or for both.

The question presented here involves the constitutional protection of the homestead from forced sale and the constitutional right of the husband and wife to create a lien on the homestead to obtain a loan with which to construct improvements thereon. The kind, character or cost of the improvements are not described and the only limitation is that such improvements must be suitable for use as a home. The husband and wife are also permitted to create liens to construct repairs or an addition to property on which the homestead right has already been fixed, Harrop et al. v. National Loan & Investment Company of Detroit, Michigan, Tex. Civ.App., 204 S.W. 878, or to pay for paving the street adjacent to the homestead, Texas Bitulithic Co. et al. v. Warwick et al., Tex.Com.App., 293 S.W. 160.

[3] After the homestead right has vested, a lien may be created thereon for repairs or additional improvements so it is manifest that the dedication of the lot or lots with the improvements thereon for a homestead, either residential or business, does not prohibit creating a lien on such homestead for repairs or additional improvements thereon to be used for and as a part of the homestead.

The Supreme Court in Rock Island Plow Co. v. Alten et ux., 102 Tex. 366, 116 S.W. 1144, 1145, in construing the Constitution says: "The homestead here defined embraces the family residence or home as well as a place of business of the head of the family. There are not two homesteads, but one homestead, a part of which may be used for the business of the head of the family. Of the lots constituting the homestead there may be one or more subject only to the limitation of the value of $5,000. They may be connected or disconnected from each other, provided they be used for the purposes of a home; that is, for such uses as contribute to the enjoyment of the home. One or more of these lots may be devoted to the business of the head of the family, but it must constitute 'a place to exercise the calling or business of the head of the family.' Under this definition of the homestead, that portion which is devoted to the business must constitute a place, that is, one place, at which the business is transacted."

In Rockett v. Williams et al., Tex.Civ. App., 78 S.W.2d 1077, 1078, the court holds:

"It is the settled law of this state from a very early date that there can be but one resident homestead at a given time, and, in the case of an urban homestead, the business homestead is but a part of the urban designation.

\* \* \* \* \*

"The lot or lots used as a business and resident homestead 'in a city, town or village' is a unit, an urban homestead, and the lot or lots used for the business must have some connection in point of locality with the residence place, and not in a widely separated city, town, or village, in no manner forming one connected urban community."

892

■ There can be but one homestead which is a unit, but it may consist of a business homestead and a residential homestead. Prior to the adoption of the Constitution of 1876 the business homestead was not exempt but thereafter, in Miller, Assignee, v. Menke's Widow & Heirs, 56 Tex. 539, 562, the Supreme Court holds that the framers of our present Constitution by the language "the homestead of a family" embraced not only the residence of a family but also a place where the head of a family may exercise a calling or business.

■ Would a lien ·created on the lot or lots to erect a business homestead deprive a husband and wife of the constitutional right of creating a lien on the same property to construct a residential homestead for the use and comfort of the family? We think not, and·no more would a mortgage on the residential homestead to erect a place in which the head of a family may conduct his business be void under the Constitution. If so, should the husband and wife be of such limited means as to be unable to contract for both a residential and a business homestead at the same time they would be put to their election as to which they could construct, and should they decide to erect a business homestead, they could never thereafter avail themselves of their constitutional right to mortgage the homestead for a family abode. We think the right to mortgage the homestead to construct improvements thereon is a right as valuable as the protection of the homestead against a forced sale. If this right should be denied many frugal, energetic and ambitious families with their hopes and dreams of acquiring a domicile would remain homeless. It is our opinion, therefore, that the lien on the homestead property of appellants with which to secure money to erect the brick building or business homestead for the husband is valid and enforceable.

■ The appellants, while they were in default, made application to the Home Owners' Loan Corporation on the terms provided in the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1461 et seq., with at least constructive knowledge of the provisions of the act, and represented that all the statements made therein were true and agreed "to furnish said corporation with a first lien on the property * * * de-

scribed" which was the lot and improvements involved in this controversy. The deed of trust given to secure the note for the money advanced by the Home Owners' Loan Corporation contains this language: "The note herein described is secured by a first lien against the hereinabove described property being given in lieu and extension of the following indebtedness:" Then follows immediately the items which constitute the aggregate amount of the loan obtained by appellants from the Home Owners' Loan Corporation. The deed of trust also contains this language: "The grantors herein acknowledge said aforesaid liens to be valid and subsisting liens against the hereinabove described property and that the payment thereof is expressly requested by the grantors herein to be made by the holder of the note secured thereby and the holder of the note hereinafter described shall be subrogated to all rights, liens, remedies, equities, superior title and benefits held, owned and enjoyed by the owner or owners of said indebtedness, all of which is hereby acknowledged and confessed."

In construing a deed of trust in which the representations made were in the same language above set out, in Roberson et ux. v. Home Owners' Loan Corporation et al., Tex.Civ.App., 147 S.W.2d 949, 953, the court says: "We think these admissions by the makers of the note and deed of trust were of such probative force as the court might determine they were entitled to receive; and if, as contended by the defendants, the burden of proof rested upon plaintiff to show that the indebtedness and lien involved in this suit were valid, such admissions of the defendants against their interests justified finding that the liens were valid and subsisting against the property. Simpson v. Edens, 14 Tex.Civ.App. 235, 38 S.W. 474; Texarkana Gas & Electric Co. v. Lanier, 59 Tex.Civ.App. 198, 126 S.W. 67; Thompson v. Moor, Tex.Com.App., 14 S.W.2d 803; Trice v. Bridgewater, 125 Tex. 75, 81 S.W.2d 63, 100 A.L.R. 1014."

We think that the appellants under the authorities and facts are estopped from denying the validity of the indebtedness and liens involved and the mortgage upon Lot·6, Block 142 of the Plemons Addition to the City of Amarillo is valid.

The judgment is affirmed.